1  ELIZABETH A. SPERLING - State Bar No. 231474
   esperling@glaserweil.com
2  ALINA GATTO - State Bar No. 341169
   agatto@glaserweil.com
3  **GLASER WEIL FINK HOWARD**
     **JORDAN & SHAPIRO LLP**
4  600 W. Broadway, Suite 2850
   San Diego, CA 92101
5  Telephone:  (619) 765-4380
   Facsimile:   (619) 732-3498
6
   Attorneys for Plaintiff
7  JOHN DOE

8              **UNITED STATES DISTRICT COURT**

9      **NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

10

11 JOHN DOE,                          CASE NO.: 5:25-cv-6465

12              Plaintiff,

13 v.                                 **COMPLAINT FOR:**

14 VAIDYAJI PRIYANKA, AKA PRIYA        **(1) RICO**
   RAVI, AKA PRIYA GANESH RAVI,        **(2) FRAUD AND UNDUE**
15 AKA PRIYANKA VAIDYA, an                 **INFLUENCE**
   individual; AUM AYURVEDA, d/b/a     **(3) CONSTRUCTIVE FRAUD**
16 AUM CUISINE, d/b/a AUMCUISINE,      **(4) NEGLIGENT SUPERVISION**
   d/b/a AUM VEDIC WELLNESS, a         **(5) CONVERSION**
17 business of unknown type or origin; AUM  **(6) THEFT BY FALSE PRETENSES**
   SACRED ART, LLC, a California limited   **(7) UNFAIR COMPETITION**
18 liability company, and DOES 1-50,   **(8) FALSE ADVERTISING**
   inclusive,                          **(9)  VIOLATION OF TOM BANE**
19                                     **CIVIL RIGHTS ACT**
               Defendants.            **(10) VIOLATION OF RALPH CIVIL**
20                                     **RIGHTS ACT OF 1976**
                                       **(11) VIOLATION OF FTC ACT**
21

22

23                                     **DEMAND FOR JURY TRIAL**

24

25

26

27

28

3093812

Plaintiff John Doe ("Plaintiff") hereby brings this Complaint against Defendants Vaidyaji Priyanka aka Priya Ravi aka Priya Ganesh Ravi aka Priyanka Vaidya ("VP"), AUM Ayurveda d/b/a AUM Cuisine, d/b/a AUMCuisine, d/b/a AUM VEDIC WELLNESS (collectively "AUM"), AUM Sacred Art, LLC, and Does 1-50 (collectively, "Defendants"), and alleges and states as follows:

## INTRODUCTION

1.      This is an action for (1) violations of RICO, (2) fraud and undue influence; (3) constructive fraud; (4) negligent supervision; (5) conversion; (6) theft by false pretenses; (7)violation of California's Unfair Competition Law, Cal. Bus. and Prof. Code §§ 17200 *et seq.*; (8) violation of California's False Advertising Law, Cal. Bus. and Prof. Code §§ 17500 *et seq.*; (9) violation of California's Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1; and (10) violation of California's Ralph Civil Rights Act, Cal. Civ. Code § 51.7.

2.      This case involves a cult, AUM Ayurveda, which is run by VP and her associates. Through a complex scheme and pattern of manipulation, brainwashing, and quite possibly drugging, the cult has destroyed Plaintiff's family and forcibly separated his two young daughters from their father.

3.      A cult is defined according to the APA Dictionary of Psychology[1] as "a religious or quasi-religious group characterized by unusual or atypical beliefs, seclusion from the outside world, and an authoritarian structure. Cults tend to be highly cohesive, well organized, secretive, and hostile to nonmembers." As set forth below, AUM Ayurveda exhibits all of these characteristics, as it seeks to seclude its members from the outside world using control tactics and preventing its members from sharing details about their lives with family members.

4.      Hallmarks of a cult and cult leader include[2]:

---

[1] APA Dictionary of Psychology at https://dictionary.apa.org/cult.

[2] See *Cult-Related Activity,* Cookman University, at https://www.cookman.edu/crl/cult-related-activity.html.

Glaser Weil

3093812

      a)     Isolating members and penalizing them for leaving

      b)     Seeking inappropriate loyalty to their leaders

      c)     Dishonoring the family unit

      d)     Absolute authoritarianism without meaningful accountability

      e)     No tolerance for questions or critical inquiry

      f)     No meaningful financial disclosure regarding budget, expenses such as an independently audited financial statement

      g)     Unreasonable fear about the outside world, such as impending catastrophe, evil conspiracies, and persecutions

      h)     There is no legitimate reason to leave, former followers are always wrong in leaving, negative or even evil

      i)     Followers feel they can never be "good enough"

      j)     The group/leader is always right

      k)     The group/leader is the exclusive means of knowing "truth" or receiving validation, no other process of discovery is really acceptable or credible

5.     AUM Ayurveda fits all of these factors as a cult and VP fits all of these factors as a cult leader.

6.     AUM Ayurveda and VP isolate their members by taking children away from their loving parents and discouraging sharing details about the cult with the outside world.

7.     AUM Ayurveda also seeks inappropriate and undivided loyalty to VP from its members by idolizing her as a divine figure who has special healing powers and divine abilities and insight and manipulates members into believing she is the only authority on their healing and/or mental or physical health.  This encourages members to stop seeing or following the advice of other health professionals or taking medication or prescribed treatment other than what is provided or prescribed by AUM and VP.

8.     AUM Ayurveda and VP dishonor the family unit by taking children away

1    from their parents, spreading harmful lies about family members, implanting false

2    memories about abuse, and instilling manufactured urges and beliefs.

3         9.     AUM Ayurveda and VP create a system of absolute authoritarianism

4    without meaningful accountability by blaming any problems or setbacks in a member's

5    life on the member or outsiders rather than on AUM Ayurveda or VP's treatment, and

6    if anyone pushes back or criticizes AUM or VP they are punished by having harmful

7    lies spread about them.

8         10.    AUM Ayurveda and VP have zero tolerance for questions or criticisms.

9    As outlined below, once Plaintiff began to question AUM Ayurveda and VP's tactics,

10   the cult began to turn his children against him by spreading harmful lies and further

11   isolating them from their family.

12        11.    AUM Ayurveda and VP have no meaningful disclosure of their finances,

13   and instead charge arbitrary amounts for their services in order to enrich their leaders.

14   As set forth in more detail below, members are forced to pay exorbitant amounts for

15   spiritual readings, poojas, yagyas/yagnas, evil spirit warding instruments (yantras),

16   jewelry, clothes, trips, foods and healthy snacks, herbs, treatments, and other expenses

17   without any transparency into why these services cost so much or where the money

18   goes.

19        12.    AUM Ayurveda and VP create an unreasonable fear in their members

20   about the outside world by spreading falsehoods about family members and other

21   outsiders.  They make members feel that AUM Ayurveda is the only safe place to

22   receive mental or physical health treatments and discourage the use of other resources,

23   including conventional medicine.

24        13.    AUM Ayurveda and VP discourage leaving the cult and demonize those

25   who do.  For example, once Plaintiff began to realize the warning signs of this cult,

26   AUM Ayurveda and VP began to turn his family against him and spread lies about him

27   and his father in order to demonize him for leaving. They also motivated his wife to

28   divorce her husband using supposed communications from her deceased father in order

Glaser
Weil

to manipulate her.

14.    AUM Ayurveda and VP make their followers feel as though they can never be good enough and always require further treatment, which of course results in more money for the cult.  They blame members for issues in their lives rather than admit that their spiritual readings and treatment are not effective as advertised.

15.    AUM Ayurveda and VP make their followers believe that they are always right by manipulating members into believing that the choices VP makes for them are beneficial and correct, and any criticism is discouraged.  For example, as outlined below, VP will choose jewelry, clothing, and what books to read for the cult's members, and does not allow outside input on these matters.  She even instructs members on what colors to wear on particular days.  Members begin to believe she is psychic or divinely blessed as details they previously shared with her appear in subsequent spiritual readings they receive.

16.    Finally, AUM Ayurveda and VP make their followers believe that the cult and VP are the only way to receive the "truth" or validation.  As outlined below, AUM Ayurveda and VP discourage their members from receiving treatment from actual mental health professionals or physicians and manipulate them into believing the cult is the only way they can achieve a better life.

17.    Jane Doe 1 has been married to Plaintiff since 2003. They reside in Texas. Together they share two minor daughters, Jane Doe 2 and Jane Doe 3. Plaintiff initiated divorce proceedings against Jane Doe 1 in Texas in June 2025 as a result of the cult's actions in destroying his family by brainwashing Jane Doe 1 and his daughters and turning them against him.

18.    In the Texas divorce proceeding, the judge issued a temporary restraining order and order setting a hearing for temporary orders, among other things, restraining the parties from disturbing the peace of Jane Doe 3 and hiding or secreting Jane Doe 3 from the other.  A further hearing will be conducted in Texas to determine whether Plaintiff should have the exclusive right to enroll Jane Doe 3 in school in Texas where

3093812

she belongs as well as whether VP and anyone at AUM Ayurveda may continue seeing or treating his children.

19.    Ever since Jane Doe 1 became entrenched in the cult in 2022, its leader VP and her associates have controlled every aspect of the children's lives, forcing them to move across the country, forcing them to change schools, isolating them from their friends and family, changing their plans for the future, and dictating every major aspect of their lives including what they may eat, where they live, who they may speak with, where they may apply to college, and where they must go to school.

20.    The cult has had exclusive custody and control over Jane Doe 2 since 2023, not allowing her to return home to Texas or to speak with or see her father since then.  The cult has dictated where she goes to school, refusing to allow her father to attend her graduation, and placing her in the home of a non-relative male selected by the cult for care and custody.

21.    The cult has implanted terrible ideas of homicide, suicide, and molestation in the minor children's minds, causing them to accuse family members of heinous crimes.  The cult has performed various measures to convert or cure one of Plaintiff's daughters from being queer or lesbian.

22.    Yet Jane Doe 1, in her Texas filing, counter-suing Plaintiff for divorce and seeking custody over the daughters, falsely asserts that both daughters have resided continuously with her in Texas and that they only relocated temporarily to San Jose, CA "solely" to attend the 2025-2026 school year.  This is false, as the elder daughter has forcibly been kept away from her father in California since 2023. She graduated from a private high school in San Jose, CA in 2025.

23.    Jane Doe 1 also falsely asserts in her Texas filing that the children are in the care of relatives, Jane Doe 1's sister, Jane Roe, Jane Doe 1's brother, John Roe, and a male associate of the cult.  This is also untrue and the male associate is not a relative.

24.    The cult has also fraudulently extracted over $650,000 from Plaintiff over the last few years through manipulation and misrepresentation after convincing Jane

Doe 1 and Plaintiff that their daughters needed specialized mental health treatment which could only be provided by the cult in California, far away from the children's home in Texas.

25.     This lawsuit is intended to hold the leader and associates of this cult accountable for the damage they have caused in destroying this family.

## THE PARTIES

26.     Plaintiff is an individual, over the age of eighteen, who resides in the County of Harris, State of Texas.

27.     Plaintiff is informed and believes, and on that basis alleges, that Vaidyaji Priyanka aka Priya Ravi aka Priya Ganesh Ravi aka Priyanka Vaidya ("VP") is an individual, over the age of eighteen, who resides in the County of Santa Clara, State of California.

28.     Plaintiff is informed and believes, and on that basis alleges, that AUM is a business entity of unknown type or origin with its principal place of business at 3272 Carol Leaf Court, San Jose CA, in the County of Santa Clara, State of California.

29.     Plaintiff is informed and believes, and on that basis alleges, that AUM Sacred Art, LLC is a California limited liability company with its headquarters at 225 Crossroads Blvd, Suite 509, Carmel, CA 93923.

30.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto, there has existed a unity of interest and ownership between VP and AUM such that any individuality and separateness between VP and AUM has ceased and AUM is nothing more than a shell entity acting as the alter ego of VP.

31.     Plaintiff is informed and believes, and on that basis alleges, that adherence to the fiction of the separate existence of VP, on the one hand, and AUM, on the other, as distinct from one another would permit an abuse of the corporate privilege and would sanction fraud or promote injustice.

32.     Plaintiff is informed and believes, and on that basis alleges, that VP used the corporate form of AUM to perpetrate fraud, circumvent statutory law, and

3093812

accomplish a wrongful and inequitable purpose. As described in greater detail below, VP uses AUM to indoctrinate clients into a cult and extort exorbitant sums from the clients under the guise of holistic therapy. In this manner, VP uses AUM as a subterfuge for illegal transactions.

33.    Under these circumstances, the Court should ignore the corporate entity under the alter ego doctrine and deem AUM's acts to be those of VP who actually controls the corporation.

34.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 through 50, inclusive (individual, a "Doe Defendant" and collectively, "Doe Defendants"), are unknown to Plaintiff at this time, and Plaintiff, therefore, sues Doe Defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint when the same shall have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that each Defendant was responsible intentionally, or in some other actional manner for the events and happenings referred to herein, which proximately caused injury and damage to Plaintiff, as hereafter alleged.

35.    Any reference to Defendants shall refer to each named Defendant and all Doe Defendants and to each of them. Any reference to a particular Defendant shall refer to the named Defendant only.

36.    Defendants are responsible for their acts and for their conduct, which are the true legal causes of the damages herein alleged.

## JURISDICTION AND VENUE

37.    This is an action for Racketeer Influenced & Corrupt Organization Act (RICO) violations pursuant to 18 U.SC. §§ 1341, 1343, 1952 and 1964, as well as violations of the FTC Act, 15 U.S.C. § 45. Federal subject matter jurisdiction as to these claims is conferred on this Court under 28 U.S.C. §§ 1331.

38.    The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states. Personal jurisdiction as to these Defendants is proper in this Court

1    because Defendants are either citizens or residents of the State of California and/or their

2    contacts and conduct within the State are systematic and continuous within California.

3        39.    Venue is proper in the Northern District of California under 28 U.S.C.

4    § 1391 as Defendants have their principal place of business and/or reside in this district.

5    Moreover, a substantial part of the events or omissions giving rise to the claims

6    occurred in this judicial district and Plaintiff has been injured in this district.

7        40.    This case is assigned to the San Jose district pursuant to L.R. 3-2(e)

8    because it arises in the County of Santa Clara.

9                    **BACKGROUND ON THE AUM AYURVEDA CULT**

10       41.    VP is the leader of AUM, an organization that claims to specialize in

11   holistic therapy and Ayurvedic medicine, including "healing" massages, various health

12   supplements, and alternative treatments.  On information and belief, neither VP nor

13   AUM have any official or recognized licensure for massage therapy or any other health

14   care, medicine, or medicinal supplement treatment prescriptions or dispensing.  On

15   information and belief, they also do not have any licensure for operating a pharmacy or

16   dispensing compounded drugs, supplements, or medicinal herbs or therapies.

17       42.    VP's associates provide "healing" massages and other services for AUM

18   clients.  These associates include, on information and belief, but are not limited to,

19   Nancy Nardona, Marc (last name unknown), Belinda (last name unknown), Richard

20   Walters and others.

21       43.    Despite AUM's public image of positivity and healing, in reality it is a

22   nefarious cult that has manipulated and influenced Jane Doe 1 to relinquish her parental

23   rights over her two young daughters and has swindled Plaintiff out of over $650,000

24   under the guise of providing physical and mental health treatment to Jane Doe 1 and

25   his daughters.

26       44.    AUM operates through a web of various subsidiaries of unknown business

27   types, including AUM Cuisine, which sells foods advertised as healing and with anti-

28   aging properties, and AUM Sacred Art, LLC, which sells jewelry to prevent the wearer

3093812

1 from being the victim of evil spells or negative energy.

2      45.    As just one example of exorbitant charges for the services offered by these

3 subsidiaries, VP charges $360 for a 30 minute consultation to select the best gemstones

4 for clients to wear. As part of this consultation, VP obtains guidance from a spiritual

5 master supposedly named Gemmie to help her select the gemstones for her clients.

6      46.    AUM uses its various subsidiaries to attract and indoctrinate extremely

7 vulnerable clients in need of guidance and healing and convince them to pay exorbitant

8 sums for products and services.  These desperate and vulnerable people pay vast sums

9 of money to AUM for healing but the products and services advertised are snake oil —

10 they fail to provide the advertised benefits, therefore inevitably forcing clients to

11 purchase additional services or products to achieve the desired benefits.

12      47.    VP establishes her own legitimacy by claiming to have multiple degrees

13 in business, medicine, and Ayurvedic medicine, from prestigious institutions like Kings

14 College in London and Columbia University. She has held herself out as a medical

15 doctor; she has purported to provide mental health therapy, diagnoses, and treatments;

16 asks clients to bring their prescription medication to her, which she claims to compound

17 with herbs in her compounding lab then re-dispenses to her clients for consumption;

18 and purports to have spiritual powers and connections to high-level spiritual masters.

19 In reality, she is a con artist who is not believed to have any formal qualifications or

20 licensure.

21      48.    There is no evidence of any of VP's claimed degrees and accolades. Yet

22 she charges between $500-$800 per hour for consultations.

23      49.    VP claims to be descended from a 725-year long lineage of spiritual

24 healers in India. Despite a relatively youthful appearance, she claims to be in her mid-

25 sixties but has two young children, approximately 3 and 6 years old, who were allegedly

26 naturally born to her when she was overseas.  VP has also made claims that these

27 children were the result of immaculate conception.

28      50.    VP claims to have rescued and adopted 18 children, though most have

3093812

never been seen by any of her clients. On information and belief, VP makes these claims in order to increase her legitimacy to those who believe she is a kind person who loves children and an example of how Ayurvedic medicine can preserve youth and fertility.

51.    When clients go to VP or one of her AUM associates with a problem they are facing, AUM will introduce the clients to its "spiritual masters," Spookie Senior, Spookie Junior, and Techie (the "Spookies").

52.    The Spookies allegedly are located in India and have the ability to predict the future, and will relay their visions to AUM members upon a paid consultation where the proceeds go to VP and AUM.

53.    Because the Spookies speak in an Indian dialect and require an interpreter, VP directs clients to her associate Richard Walters, who acts as the intermediary between clients and the Spookies.  It is believed that no one has ever met Richard Walters.  His location is unknown, though VP has stated Richard lives in Europe.

54.    During "readings" with Richard and the Spookies, clients explain the problem they are facing and Richard connects with one of the Spookies for their recommendation as to how to solve the problem.

55.    These "readings" cost varying amounts, depending on the level of Spookie who is needed and the level of divination required, paid to AUM or VP directly. For example, if VP determines that the client has financial constraints or limitations, she will offer a reading from a "Spookie-in-training" for a lower fee.  Clients are asked to bring one or two witnesses assigned by VP to these readings and take notes.

56.    The Spookies, after allegedly analyzing the client's problem as brought to them by Richard, invariably recommend "poojas," or prayers, which are meant to resolve the issue. These prayers, depending upon the complexity of the problem, cost between a few thousand dollars to over $25,000, also paid to AUM Ayurveda or VP directly. The actual cost of a pooja or prayer in India varies between $100 and $250 depending upon complexity.

57.    Importantly, clients never connect with the Spookies directly and are only

3093812

able to communicate with Richard via text message to a U.S. phone number. Once Richard speaks with one of the Spookies, Richard calls the client from a blocked phone number to relay the Spookies' message.

58.    VP and Richard use these readings to establish the divinity of the Spookies, using details that clients have shared with VP or her AUM associates to convince the clients that the Spookies have real insight into their lives.

59.    AUM also uses the Spookies to control its clients and prevent them from sharing information with the outside world. If a client shares information that AUM or VP do not want public, the client will receive a message from Richard or another associate accusing them of "oversharing," which upsets the Spookies, in order to scare and threaten people into submission.

60.    VP projects herself to clients as a divine being who is able to correctly predict what the Spookies will say in a reading.

61.    Once AUM has established trust with a new member, VP and her associates turn to their cult's playbook of manipulating the member with false accusations and lies about their condition, their history, or their family members in order to further isolate the client and necessitate additional treatment and payments. VP and Richard ensure that clients do not share their conversations with the Spookies with outsiders, even spouses, siblings, and parents.  Isolating clients from their support groups is a key step in the cult's playbook.

62.    Once indoctrinated, VP and her associates exert control over the cult's members by telling them to wear specific clothes on particular days so that they all match and can be identified as a member.  Additionally, VP will tell clients to wear particular colors to supposedly enhance their moods, ward off evil, and act as a complement to her jewelry.

63.    VP and AUM insist that members purchase and wear jewelry made by VP through AUM Sacred Art that supposedly prevent negative energy, and they are only permitted to read books approved by VP.

3093812

64.    On information and belief, VP instructs members to bring in their prescription medications to allow her to compound the pills with herbs, which she does and then returns to members to consume after they have been compounded. Although VP claims to have a permitted compounding lab, on information and belief, she does not and this activity is illegal, misleading, and highly dangerous.

65.    VP's and AUM's playbook is well established and documented, as several former clients have warned online of their experiences with AUM and VP, stating that VP is a con artist without real qualifications and that she has scammed many people out of significant sums of money:



A T.
Colonia, NJ
0 friends
2 reviews

★☆☆☆☆ 4/3/2025
Money looting business. Very very expensive.Rude, back biting! and your health information is not safe

Neha P.
Edison, NJ
0 friends
7 reviews

★☆☆☆☆ 4/3/2025
very expensive with no reason. looting money. Her medicines that she says she makes or uses are absolutely of no use.

**Yikes M.**
Columbia Falls, MT
📷 0  💬 4  🖼 0

★☆☆☆☆ Jun 9, 2017

Unethical practice in all regards! I do not recommend AUM Ayurveda! Poor treatment of employees on staff. Pricing over expensive not consistent. Never gives receipt. Makes me wonder if Vaidya Priyanka has some trouble with the law or malpractice cases. I have given more money here and received little results. I have been misdiagnosed here and manipulated! Too much drama from someone who is a disgrace to the entire alternative, Ayurvedic health community. My personal experience and my friends I sent to her found this woman to be a pathological liar. Annoying pushy about returning for more appointments. My patient confidentiality was violated people i did not know shared intimate details with me that I shared in my private consultations. Why would An Ayurvedic doctor betray customer loyalty?

We need better practitioners with integrity and morals. This is a Shame please don't waste your time or money here.

   

Helpful **9**    Thanks **1**    Love this **1**    Oh no **1**

3093812



**Vaidya E.**
Sunnyvale, CA

⬜ 0  ⬛ 1  ⬜ 0

⭐☆☆☆☆  Jul 1, 2015

Most people don't know Priyanka V. like I do, so its only natural to wonder what testimony I might offer after being her patient for the last 8 years. My testimony amounts to a waring: DONT BELIEVE A WORD THE LADY SAYS.

Dont misunderstand me. Many people and many institutions lie and I get that. But Priyanka does it with such audacity, and such frequency, that she stands out.

When Priyanka meets a patient, she speaks so clearly and forcefully that you assume genuine conviction is behind it. Be careful, though. Its kind of spell. She is a remarkable talent with a silver tongue. But if you look closely, you can see that it is forked like a serpent's tongue.

💡 Helpful 8     🤚 Thanks 1     💗 Love this 1     😮 Oh no 0

66.   Upon information and belief, VP has successfully been able to remove several one-star negative reviews from AUM's Yelp page:



67.    On information and belief, VP owns several properties and expensive vehicles and has multiple nannies for her young children, which adds credibility to her façade that she is a successful healer and businesswoman when in reality she has garnered significant wealth by taking advantage of vulnerable people through her fraudulent scheme and used the money she has extracted from desperate people to fuel her lavish lifestyle.

68.    There is even a blog page dedicated to the cult tactics of AUM entitled "Truth About Aum Ayurveda" in which many former unwitting members detail the fraudulent scheme that destroyed their families:



**CommonSense** May 3, 2012 at 4:12 PM

Vydyaji is an opportunist. Profiting from helpless cancer patients. She is not even a true ayurvedic doctor. Stay away from her if you have basic common sense.

Reply



**hurtbyaum** November 12, 2013 at 10:32 PM

I was naive, thinking that Vaidya was there to help my family. We gave her tons and tons of money without giving it an extra thought...trusting her. Now, I am no fool. I have had it with her lies, manipulations, and most of all her successful attempt to tear up my family.

**Beware** August 20, 2014 at 11:48 AM

Vaidyaji has all the scary features of someone with a narcissistic personality disorder. Beware. She will cause harm if she feels threatened. She chooses people who are naive, vulnerable and desperate and brainwashes them to worship her. Yes, she genuinely believes she IS a Goddess and expects to be worshipped. No, mere admiration is not enough.

I cannot believe that a professional can practice without divulging their family name. That means you cannot check her credentials and cannot complain about her to any authority.

Of course, her knowledge of Ayurveda is a separate matter. My comments are purely about her personality and her unjust manipulative behaviour with vulnerable people and people experiencing a low point in their lives.

Instead of using this blog to share experiences (no matter how reassuring), how about using this blog to provide ideas on how people can help others from falling into this Vaidyaji Priyanka trap. Is there any Ayurvedic regulatory board in the USA that can be approached to file a complaint?

Reply

3093812

**Unknown** July 18, 2014 at 2:25 PM

Thanks for creating this blog. I don't know where to even start. Like most people in this site, Priyanka has destroyed my family. Dealing with her has been like dealing with the devil.

From my experience, Priyanka tends to feed on people with low self-esteem and a weak mind. She tends to feed on people who have never been taught to feel good about them-selves, seek constant approval from those around them. I call it the "gold star" system, like they feel they deserve a gold star for everything they do. She finds these people and feeds them exactly what they want to hear and takes advantage of their money and uses them to serve her life and business. One of which is an employee of hers. This employee was apparently poisoned by the mom and was in the hospital. Priyanka first met the employee in the hospital. The employee's dad apparently contacted Priyanka for help. Personally, I haven't heard of a hospital that released a patient that was suspected of being poisoned (I work at a hospital, so I am very familiar with the protocols). Priyanka would publicize this information to everyone (including strangers) in front of the employee. Priyanka uses this tactic to get pity from everyone for the employee. Priyanka does this repeatedly to all her employees to reinforce and increate the hatred the employees have toward their parents and control them and give them hope. Once the employees turn 18, even though they are not in a well state of mind, she uses the age as a power (parental control/consent is no longer needed at 18) to separate them from their parents. Priyanka manipulates and controls their day-to-day life to her benefit. The strange part of this story is that the employee (the one that was poisoned) still keeps regular/close contact with the parents, which seems really strange. This employee has also been a key role in breaking up my family.

In my experience I haven't seen this many bad reviews of a therapist, doctor or whatever she calls herself these days. There are many other ethical ways to get help from others. In my humble opinion, I would put her up in a pedestal with other cult leaders in history such as David Koresh, Marshall Applewhite, Jim Jones and Shoko Asahara. I am sad put her in any pedestal but the truth has to be told. She runs a very unethical practice and only has own self-interest.

Reply

## PLAINTIFF'S INVOLVEMENT WITH AUM

69.     In or around early 2022, Plaintiff's family had the misfortune of being introduced to AUM through another family member.

70.     Jane Doe 1's sister Jane Roe introduced Jane Doe 1 to VP in early 2022.

3093812

Jane Roe's late husband had recently been under VP's care, receiving holistic treatment to ease his cancer symptoms until he passed away in February 2021.

71.    VP and her associates told Jane Roe that the Spookies had divined that her husband's cancer was caused because he and his brothers destroyed a divine plant in a previous life.

72.    VP and her associates bombarded Plaintiff and his wife with scare tactics for years, insisting that their daughters were filled with homicidal urges, including that the elder sister posed a real and immediate threat to kill the younger sister, and that the elder sister had sexual perversions that needed to be removed.  The only way, according to VP, that the daughter could be saved and healed from her homosexuality and sexual perversions was to have her live with other AUM members in Santa Clara County, California, under the close and watchful eye of VP, who would inevitably come to control every aspect of her life.

73.    After the death of the girls' uncle, VP provided "nutritious" meals and offered grief counseling to Jane Roe and her family.  She also offered her "healing" services to Jane Doe 1 to help manage her arthritis pain.

74.    In order to isolate Jane Roe after her husband's passing, VP and her associates claimed that Jane Roe's father-in-law had molested several young children, including his daughter. These false accusations were intended to separate Jane Roe from her in-laws after her husband died, further isolating her and allowing her to become fully indoctrinated into the cult.

75.    Ostensibly under guidance from the Spookies, VP convinced Jane Roe to install a fence around her house to prevent her deceased husband's friends from visiting. VP convinced Jane Roe that her mother-in-law had hired a black magic practitioner in Singapore to harm her and her children.

76.    VP convinced Jane Roe to pay a significant amount of money for treatments to alleviate her husband's suffering before he passed away.  After her husband's death, VP further gained Jane Roe's trust by offering grief counseling to her

Glaser Weil

3093812

1   children.

2       77.    On information and belief, VP indoctrinated Jane Doe 1's brother John

3   Roe into the cult by falsely claiming that his wife had cheated on him with multiple

4   people at her work and that she had received an abortion as a teen which prevented her

5   from having children with John Roe. VP influenced and manipulated John Roe with

6   claims that his wife was using "black magic techniques" to attempt to kill John Roe.

7   The black magic practitioner was supposedly living in Singapore and acquainted with

8   John Roe's sister-in-law. Despite the lack of evidence for any of these claims, but due

9   in part because of them, John Roe filed for divorce.

10      78.    After Jane Doe 1 and Jane Roe's mother died in September 2022, VP took

11  advantage of their grief by offering counseling and treating their father using

12  naturalistic medicine.  As a result of VP's care, their father, who was blind, was able to

13  reduce his medications.  This further solidified VP's legitimacy as a healer to Jane Roe,

14  John Roe, and Jane Doe 1.

15      79.    Jane Doe 1 was intrigued by the healthy food options VP sold and by her

16  sister's positive experience with VP. As a result, she began seeking care from VP for

17  her rheumatoid arthritis as well as preventative care for her two daughters.

18      80.    When Jane Doe 1 introduced her daughters Jane Doe 2 and Jane Doe 3 to

19  VP later in 2022, VP offered to train Jane Doe 2, an aspiring singer, with online voice

20  lessons.  Jane Doe 2 did improve significantly following these lessons as a result of her

21  increased practice, though VP took credit for this success in order to convince Jane Doe

22  1 of her abilities.

23      81.    After earning the trust of Plaintiff and Jane Doe 1 through her treatment

24  of the arthritis and singing lessons, following her typical playbook VP began fabricating

25  harmful lies and false diagnoses regarding the children in an effort to influence Plaintiff

26  and Jane Doe 1 to relinquish control of their daughters and continue paying substantial

27  sums to her business for their treatment.

28      82.    Plaintiff and Jane Doe 1's elder daughter Jane Doe 2 had begun to identify

3093812

as queer and lesbian. This troubled Jane Doe 1. She expressed hope that it was a phase that would pass.

83.    With this knowledge, in or around December 2022, VP informed Jane Doe 1 that Jane Doe 2 had deviant sexual tendencies allegedly caused by her reading manga comics.

84.    VP also claimed that reading manga comics caused Jane Doe 2 to be unable to separate reality from fantasy, and instructed Plaintiff and Jane Doe 1 to get rid of all manga from their home.

85.    VP told Plaintiff and Jane Doe 1 that she would be able to resolve Jane Doe 2's "ailments" through treatment, which essentially functioned as conversion therapy. Plaintiff and Jane Doe 1 had argued over Jane Doe 2's sexual orientation and gender identity.  Plaintiff believes that neither is a choice.  Jane Doe 1 expressed her belief that they are choices and that Jane Doe 2's "choices" were deviant and needed to be cured. In the spirit of keeping peace at home, and in order to respect the trust Jane Doe 1 and her family had in VP and her legitimacy as a healer and spiritual leader, Plaintiff went along with Jane Doe 1's insistence that they pay VP for their daughter's treatment. Plaintiff ultimately agreed to do so with the understanding that it was not going to be a form of conversion therapy but rather therapy to help his daughter better understand and come to terms with her sexual orientation and gender identity.

86.    As a result, Jane Doe 1 took Jane Doe 2 and Jane Doe 3 to San Jose, California, where AUM is located, during their spring break from school in 2023. At that point, VP convinced Jane Doe 1 that she needed to send both of her children to a summer camp run by VP and AUM which supposedly taught children how to live in the modern world while not being distracted by modern technology.

87.    As part of this camp, the children were required to leave their cell phones behind and calls would be monitored by VP. As a result, Plaintiff was unable to contact his daughters for several weeks despite the fact the younger girl was only 12 years old at the time.

3093812

88.    When Jane Doe 1 visited her younger daughter in California during the summer of 2023, VP informed her that her daughters would require additional treatment, which meant a longer time isolated from their parents and, of course, additional money.

89.    After the summer, Jane Doe 1 began to see positive improvements in her younger daughter such as improved reading skills. VP also assisted Jane Doe 3 with getting contact lenses to improve her eyesight which improved her physical abilities such as dancing. This further legitimized VP as a healer in the eyes of Jane Doe 1, increasing her trust in her abilities and allowing Jane Doe 1 to become further indoctrinated in the cult.  Plaintiff later discovered that a friend of VP took Jane Doe 3 to receive the contact lenses, but VP took credit for the friend's work.

90.    Despite these improvements, Jane Doe 3 became very guarded in her communication with her father and began constantly texting VP. Jane Doe 1 refused to allow Plaintiff to read the texts and prevented him from knowing what his daughter was communicating with VP about. Jane Doe 1 also began seeking VP's advice on all issues, from what she should wear to who she should hang out with.

91.    After the camp ended, Jane Doe 2 stayed with Jane Roe in California to continue receiving treatment from VP.

92.    VP began to be involved in the young girls' medical care apart from the therapy and reading instruction.  For example, VP instructed Jane Doe 1 to not allow her children to receive flu and COVID-19 vaccines.

93.    VP effectively became the children's primary care physician, as they were not permitted to see any other medical professionals and, on information and belief, Jane Doe 2 has not seen another primary care physician since 2023, despite that both children remain as dependents on their father's medical insurance plan.

94.    In or around late July or early August of 2023, VP called Jane Doe 1 and claimed that she had received a warning from the Spookies that Jane Doe 2 had murderous thoughts and tendencies and had searched online how to strangle her little

sister. Plaintiff found this incredulous as Jane Doe 2 had never been violent before. Further adding to the incredulity of this statement, according to the divorce filings, Jane Doe 2 and Jane Doe 3 are living together at VP's behest despite the allegation that Jane Doe 2 wanted to kill her sister.

95.    VP also claimed that one of the Spookies warned her that Jane Doe 2 was planning to take her younger sister to Mexico in an unmarked white van to be sold as a sex slave. The Spookies claimed that Jane Doe 2's young teenage friend from high school in Texas was the ring-leader of an international child trafficking group, and would receive $2,500 for every child they brought to Mexico.

96.    Jane Doe 1 believed all of VP's false accusations and was horrified, which allowed VP to convince Jane Doe 1 to officially move Jane Doe 2 to California in late summer 2023 and enroll her in a private school in Santa Clara County to avoid these dire situations that the Spookies warned would come to pass.

97.    Plaintiff initially resisted the effort to allow Jane Doe 2 to go to California, but Jane Doe 1 manipulated him into believing these lies and that their daughter was in danger, causing him to relent and pay for her lodging and schooling in California. Plaintiff now believes that VP and her associates were preparing Jane Doe 1 to engage in arguments with Plaintiff regarding their daughters' care in order to control and manipulate him into submission. For example, they appear to have scripted statements and arguments for Jane Doe 1 to make to her husband in order to overcome his objections to allowing their daughter to remain in California under VP's care.

98.    VP assured Plaintiff that Jane Doe 2 would only receive treatment in California for a few months and he would be able to see her on holidays. Instead, VP and AUM prevented Plaintiff from having any further contact with Jane Doe 2 since, causing him to miss all holidays with her and even her high school graduation. In fact, Plaintiff has been prevented from seeing Jane Doe 2 at all since July 2023. Of course, had Plaintiff known then what he knows now, he never would have permitted his children ever to have any contact with VP and AUM, let alone move to California.

3093812

99.   Upon Jane Doe 2's move to California, VP took control of her cell phone and insisted she receive a new phone number and email address so that she no longer had contact with any of her friends in Texas.

100.   Whenever Plaintiff was scheduled to visit his daughter, VP would contact Plaintiff  and Jane Doe 1 and say that Jane Doe 2 had some kind of psychiatric break or meltdown, and that she could not speak to or see her parents after all.

101.   Although many of Plaintiff's friends and spiritual advisors questioned his decision to send Jane Doe 2 to California, VP and Jane Doe 1 repeatedly instructed him to not share any information about his daughter to outsiders, further isolating him and his family from their community and preventing them from hearing important outside perspectives.

102.   Once Jane Doe 2 moved to California, VP continued to manipulate Jane Doe 1 into relinquishing control over her daughter. For example, VP convinced Jane Doe 1 to fire Jane Doe 3's singing teacher because VP claimed the teacher used "black magic" to manipulate children.

103.   VP also instructed Plaintiff and Jane Doe 1 to avoid using insurance to pay for any of her medical care in order to prevent an established record of mental health treatment, which VP claimed would prevent Jane Doe 2 from being admitted to a good college. This, of course, increased the cost of Jane Doe 2's care to Plaintiff, which Plaintiff was required to pay to VP and AUM in cash.

104.   VP also began to falsely claim that Jane Doe 2 was making sexual advances on the therapists who were treating her. Plaintiff again was incredulous because this was very out of character for his daughter.

105.   When Plaintiff pushed VP to provide the names of the therapists and counselors treating his daughter in order to use his insurance for payment, VP refused under the guise of privacy concerns, which is nonsensical given that Jane Doe 2 was a minor and her father is entitled to information regarding her medical and mental health treatment that he was paying for.  Jane Doe 1 asked Plaintiff to pay over $100,000 for

3093812

1   ongoing psychological treatment for Jane Doe 2.

2      106.   VP and AUM have controlled every aspect of Jane Doe 2's daily life since

3   she has been under their control in 2023, including deciding which private high school

4   she would enroll in and to which colleges she could apply.

5      107.   As a result of the cult's choices, Plaintiff was forced to spend over $55,000

6   in tuition costs to send Jane Doe 2 to a private high school in California, which he

7   would not have incurred if she had stayed in Texas and attended the very highly-rated

8   public school nearby as planned.  Jane Doe 2 was in fact enrolled at a premier school

9   in Texas and had a 4.75/5 GPA when she was forced to move to California.

10     108.   AUM also arranged for Jane Doe 2 to stay in a house with a single adult

11  male, unrelated to Plaintiff, and an associate of VP. This arrangement required Plaintiff

12  to pay $1,000 per month in rent, which was later increased to $1,400 per month. This

13  has totaled approximately $48,000 to date, another exorbitant cost that Plaintiff would

14  not have paid had he been able to keep Jane Doe 2 at home with him in Texas.

15     109.   Jane Doe 1 also made regular payments through checks, wire transfer, or

16  electronic payments to AUM and the male associate for food and other necessities for

17  Jane Doe 2. Prompted by VP, Jane Doe 1 often demanded more and more money from

18  Plaintiff for various treatments and necessities, though Plaintiff often was not privy to

19  details and was told to trust VP and the Spookies' guidance.

20     110.   Once  Jane Doe 2 was in California under VP's care, VP "diagnosed" Jane

21  Doe 2 with manic depression, bipolar disorder and schizophrenia. The Spookies told

22  Jane Doe 1 that VP would be able to cure these conditions using herbal treatments

23  within four years if Jane Doe 2 remained sequestered in California with VP and poojas

24  were regularly conducted.

25     111.   In November 2023, VP informed Jane Doe 1 that Jane Doe 2 was

26  associating with transgender students at school, which was forbidden behavior

27  according to VP and the Spookies. As punishment Jane Doe 2 was not allowed to

28  celebrate Jane Doe 1's or her own birthday with her family in Texas over Thanksgiving

3093812

break.

112.   By December 2023, VP's scare tactics to convince Plaintiff and Jane Doe 1 that Jane Doe 2 needed additional treatment had escalated. VP now alleged that Jane Doe 2 had attempted to stab the mother of the male associate with whom Jane Doe 2 lives. Although VP claimed this was caught on one of the alleged twenty or more cameras in the house that surveil Jane Doe 2 constantly, she has refused to show any such corroborative footage to Plaintiff. Nor did she provide evidence that a police report had been made.

113.   VP also falsely claimed that Jane Doe 2 attempted to grope the mother of the male associate, a woman in her eighties, alleging this was further proof of Jane Doe 2's sexual deviance.  No evidence has been provided about this event either.

114.   Following these accusations, Richard told Jane Doe 1 that in order to resolve Jane Doe 2's murderous tendencies she would need to pay for poojas. In December 2023, Jane Doe 1 submitted a payment of $16,631.83 to AUM for a pooja. By January 2024, VP proclaimed the pooja had worked and Jane Doe 2 was better and no longer had murderous or sexually deviant thoughts.

115.   By summer 2024, Jane Doe 1 began to allow Jane Doe 3 to regularly visit VP and receive treatment, to the point that she began to spend all holiday breaks in California.  Plaintiff flew to California in July 2024 to see his daughter for her birthday. But VP claimed Jane Doe 2 was too busy studying to see her father whom she had not seen in over a year and she refused to allow him to see his daughter.

116.   VP also falsely claimed that she cured Jane Doe 1 of cancer three separate times during 2024 using her "healing" massages. Jane Doe 1 believed this claim despite no medical evidence of her having cancer in the first place.

117.   Furthermore, VP's associates help her spread false accusations in order to further indoctrinate their members. For example, John Roe claimed that he saw Marc, an AUM employee who has never been seen by outsiders, with cuts on his face after Jane Doe 2 allegedly attacked him, but again no video evidence or police report

3093812

documenting this was ever provided to Plaintiff despite his requests.

118.   By March 2025, VP began alleging that Jane Doe 2 was increasingly interested in drugs, requiring further treatment. Plaintiff found this incredulous given that Jane Doe 2 had never shown such interest before.

119.   She also falsely accused Jane Doe 2 of attempting to sell hundreds of dollars of jewelry made by VP and AUM Sacred Art in order to buy drugs.

120.   In or around April 2025, VP frantically called Jane Doe 1 and demanded that she come to California as Jane Doe 2 had apparently overdosed on some kind of drug cocktail. Though VP claimed a drug test was administered, Plaintiff was forbidden from reviewing the results.  VP speculated that Jane Doe 2 overdosed on bath salts and claimed she was "detoxing" Jane Doe 2. No information was provided to Plaintiff about the overdose or the treatment and Plaintiff was prevented from seeing his daughter.

121.   In April and May 2025, VP instructed Jane Doe 1 to go to India to meet with spiritual advisors for several weeks in order to accelerate her treatment. Once in India, VP ordered Jane Doe 1 to purchase several suitcases full of items, claiming that the items had been divinely blessed.  Jane Doe 1 demanded that Plaintiff fund these trips in order for their daughter to get better. These trips cost $25,000 or more and the cost of the trips were paid to AUM.

122.   In or around May 2025, both VP and Richard began making false accusations regarding Plaintiff's father, alleging first that he molested eight children, including Jane Doe 2 and Jane Doe 3. Jane Doe 1 and Plaintiff were directed to a reading with Richard after a few days, when the number of victims rapidly increased to 38 without detail.

123.   VP claimed that one of Jane Doe 2's therapists confirmed she was a victim of abuse by her grandfather, though again VP would not allow Plaintiff to know the name of the therapist or any other details.  Despite the fact that therapists are mandatory reporters of child abuse, there is no evidence that any report was ever made to the authorities by VP or the therapists she engaged who related these accusations to her.

3093812

124.   Additionally, Jane Doe 2 allegedly confirmed this abuse during a lie detector test witnessed by John Roe. Notwithstanding the gross invasion of privacy and inappropriateness of a non-medically licensed professional subjecting a minor to a lie detector test witnessed by her uncle to discuss [false] allegations of child abuse and molestation by her grandfather, and without the presence or authorization of her father, Defendants refused to provide any evidence or results from this event to Plaintiff. VP confronted Plaintiff with the supposed results in an effort to manipulate him. But when Plaintiff requested the lie detector test results and to speak with his daughter, VP and Jane Doe 1 refused. Instead, they threatened to inform his employer that he was harboring a pedophile by allowing his father to live with him.  VP's main associate Richard told Plaintiff that by letting his pedophile father live with him, he was likely to lose his job.  Richard also added that the sale value of Plaintiff's home would decrease for harboring a pedophile in it.  He told Plaintiff, "you have the best people in the world working for you," and asked him to continue listening to VP and the Spookies.

125.   Richard also falsely alleged that Plaintiff's father sexually assaulted his cousins, one residing in Minnesota and the other residing in India, who have both adamantly denied this ever occurred.

126.   Richard and VP continued to manipulate Jane Doe 1 into relinquishing control over Jane Doe 3 based on their false accusations and instructions to not to overshare with family or Plaintiff.  They also encouraged her to push back against Plaintiff's resistance to AUM's control over his daughters and encouraged her to continue to manipulate him to make large payments to AUM despite his growing doubts about the legitimacy of the treatment.

127.   Texts between Richard and Jane Doe 1 from May and June of 2025 indicate that he and VP were continuing to exercise control over Jane Doe 1, encouraging her to keep their plan to move Jane Doe 3 permanently to California private by deleting these messages, which on information and belief, exhibits consciousness of guilt and attempts to cover up wrongdoing. In these texts, Richard

repeatedly refers to Jane Doe 1's dead father, who had passed away over six months prior to these texts, and purports to convey messages to Jane Doe 1 from her dead father that were passed on through him from the Spookies.  This is another obvious attempt to manipulate and exercise control over Jane Doe 1 by VP and her cohorts.

Mon, May 19 at 5:54 PM

Read yr whatsapp

Yr dad is living with regard to what u have been doing

Mon, May 19 at 6:55 PM

Livid *

Has the confusion resolved ?

Yes, he is calm right now

3093812

What is the resolution

We are not talking about anything right now.

The spookies don't like to be overstepped by the spiritual guidance they are giving you

Techie has said that if you don't want their attention and advice,they are willing to drop their association

Will be careful going forward. Was overcome by anger.

Combined by the need to have more funds at my disposal.

Tue, May 20 at 9:48 AM

What r u doing

Techie is going  nuts

Stop making frantic calls

He can clearly see everything

John Doe wants to hold Jane Doe 3 back from moving to California beacuse bank balances are drying up

I asked John Roe if my portion of my father's funds can be used towards her tuition and living.

Tue, May 20 at 11:09 AM

Ofcourse it can be

But pls ask Techie or yr dad first

So he can guide u

Now do u relaise what yr oversharing has done

Yes, I do

Will ask for guidance before transferring funds.

He cannot screw up Jane Doe 3's future

I am worried about that as well.

28
COMPLAINT

3093812

Tue, May 20 at 5:35 PM

What is the plan now

Is ▮ relocating as planned ?

▲ Jane Doe 3

Tue, May 20 at 6:48 PM

I have not brought it up with ▮ yet. Will bring it up with him in a bit.

▲ John Doe

Will mention to him that funds will come from my father's account.

It is a struggle. He says he wants to see real progress with Jane Doe 2 before committing ▮ to California and a spend rate that is unsustainable.

▲ Jane Doe 3

He wants to talk once I return from India.

Jane Doe 3 will be going to California for Memorial Day weekend and again on June 6th when the school year ends.

Tue, May 20 at 11:33 PM

So she will be going to private school in Santa Clara County

Yes ?

And is the old man leaving ?

Wednesday 4:17 AM

The old man is leaving for sure.

Jane Doe 3 will spend the summer in California. He has not

started looking for other schools. So my sense is he will agree to school but I don't have a yes from him.

I don't have access to Splitwise. He needs to see the spend on things other than just pujas.

He is going crazy on the spend.

He thinks the spend is going to stay this way.

29

COMPLAINT

1

2       Wednesday 5:26 AM

        He also doesn't like that he has been kept away from all
3       decision making.

4       Wednesday 7:38 AM

5   Explain to him that the spend will not stay this way since
    she is recovering
6

7   Say u know that for sure

    Also say jt is unfair to [Jane Doe 3] and it can be sorted out
8

9                       I have said all that. He also says the relationships are too
                        transactional. One pays to get what they want instead of
10                      Bhakti. It is going to need Vaidyaji or one of the spookies to
                        explain to him. It is very hard for me to break in when he is
11                      in that frame.

12
                        It could also be that he has sensed that I am going to leave
13                      him. So by keeping [Jane Doe 3] here he can keep the marriage.

14  That is true

15  All this could have been averted if you had not been so out
16  there

17  With emotions

18                      Had a long conversation with him. He is questioning
                        everything including the validity of the accusations about
19                      his father, ashtami and navami given as good days to pay
                        the deposit at the new place for his father.
20

21                      He wants to ask his cousin she was molested by the man.

22

23

24

25

26

27

28

30
COMPLAINT

1  Ask him to ask those questions to the spookies

2  He can do what he wants b

3  With regard to his cousin

4  Just text him the following verbatim

5  Do you know that the way I saw our daughter [Jane Doe 2] that
6  day, she was closer to her death, than her life, so have
   gratitude for people who know more than you

7
   I don't want him to get upset with me because I am sharing
8  too much with you and deny [Jane Doe 3] the opportunity.

9  Not seeing the older one is hurting him.

10 He called again. He says he is being stalled. His questions
11 don't get answered and he is kept out of everything.

12                    Saturday 6:00 PM

13 Richard, can I get a Splitwise report for the spend from
14 January as a PDF? [John Doe] started an argument about the spend
   again. He also says he wants to believe the his father did
15 the wrong thing to the girls but he has no proof.

16 I don't know how to do that as a pdf

17 U will have to create an acct and do it from yr end

18 I have too many actionables for yr massyam trip

19 Pls do it from India

20 If necessary or wait until u r back

21 And stop talking to him

22 Just say no woman will lie about molestation or rape

23 It is sick that he does not believe his daughter

24
25                                                    Ok

26 Did u say the last 2 things and say that he does not have to
27 drop u at the airport with that kind of an attitude

28 And delete these messages

31
COMPLAINT

Glaser
Weil

Yr dad says stay focused and get divorced

And stop over sharing

He has talked to his cousins and both of them have said they were not molested. If I tell him that no woman will lie about molestation he will say his cousins are right.

Will stay quiet

Just want him to not stop Jane Doe 3 from moving.

Going to delete these messages

He can't do that

Ok

Requesting any puja needed so she can move unhindered and attend private school

Deleting all messages from my end.

128.   These false accusations caused Plaintiff to pay nearly $1,700 to VP for the Spookies to conduct prayers to rectify this issue.

129.   VP and Richard instilled fear in Jane Doe 1 and Jane Doe 3 by forcing them to make last minute changes to their flights home when they traveled from Texas to California, alleging that their lives were in danger if they stayed on that flight. This resulted in last minute flight change fees and also required payments directly to AUM for helping them avoid disaster

130.   Since Jane Doe 2 was taken to California, her father has been completely cut out of her life and is unable to make decisions regarding her education or other aspects of her life. VP and the Spookies have told Plaintiff that allowing him to contact Jane Doe 2 would harm her energy and ability to heal.

131.   Every aspect of Jane Doe 2's life is decided by VP and AUM, including what she eats, watches, wears, and who she hangs out with. VP and Richard hand-

3093812

picked a list of universities to which Jane Doe 2 was allowed to apply, none of which were located in Texas. VP coerced Plaintiff to enroll in college in Northern California, close to VP so that VP can continue to exercise her control over Jane Doe 2.

132.    Jane Doe 3 was also taken to California without Plaintiff's consent in June 2025. She was forced to turn off her phone so that her father is unable to track her location. Plaintiff does not know her current whereabouts and has been unable to speak to her since she left. AUM required Plaintiff to pay $1,500 per month for her housing costs up until June of this year, despite not knowing her location or with whom she is living.

133.    Over the last several months, VP and AUM have turned Jane Doe 1 against Plaintiff, claiming that he and his father are the reason she suffers from rheumatoid arthritis, and that Plaintiff's treatment of the children caused their mental health crises.

134.    VP informed Plaintiff that if not for her causing "this separation" between him and his daughters, Jane Doe 2 "would have been suicidal" or would "have been a sex slave."

135.    On information and belief, Plaintiff believes that VP exercises control over his daughters and potentially his wife through chemical submission potentially through her food and compounded pills, based on observations that his wife has a glazed appearance and has become unusually quiet and withdrawn. Others have noted similar observations in Jane Doe 2 and Jane Doe 3.

136.    Plaintiff also has no knowledge and has given no consent regarding what kinds of medications, supplements, drugs or substances VP is administering to his children.

137.    The cult has destroyed Plaintiff's family, forcing him to file for divorce from his wife who is fully indoctrinated and who is attempting to force him to relinquish his parental rights to strangers. There are currently custody proceedings underway in both Texas and California family courts.

3093812

# FIRST CLAIM FOR RELIEF
## (RICO – 18 U.S.C. §§ 1341, 1343, 1952, 1964)
### (Against All Defendants)

138.   Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

139.   Plaintiff is informed and believes, and on that basis alleges, that Defendants created a web of false accusations and diagnoses to manipulate and defraud Plaintiff out of over $650,000 during the period from late 2022 to present under the guise of his daughters' mental health treatment and health and wellness therapies.

140.   Plaintiff is informed and believes, and on that basis alleges, that Defendants induced Plaintiff to make these payments on the basis of Defendants' knowingly false representations regarding his daughters' mental health diagnoses, when in fact Defendants knew or should have known that Plaintiff's daughters were not suffering from the ailments claimed.

141.   Despite Defendants' knowledge that Plaintiff's daughters were not suffering from these ailments, Defendants knowingly and willfully represented to Plaintiff that his daughters were suffering from these ailments and their lives were in danger with the intent of causing Plaintiff to rely on these representations to make exorbitant payments for their treatment totaling over $650,000.

142.   To facilitate this scheme, VP utilized her various business entities to create legitimacy in order to cause Plaintiff to reasonably rely on Defendants' claims of serious mental health diagnoses.

143.   Jane Doe 1, from her joint accounts with Plaintiff, made payments via electronic transfers or wires to VP and AUM totaling over $650,000 based on Defendants' false representations. These payments were to Plaintiff's detriment and crossed state lines in that they were initiated in Texas, where Plaintiff resides, and Plaintiff is informed and believes that the money went to California, where VP resides and AUM is based.

3093812

144.   Plaintiff is informed and believes, and on that basis alleges, that the moneys received by AUM were funneled to VP.

145.   Plaintiff is informed and believes, and on that basis alleges, that none of the money AUM or VP received was used for its intended purpose of curing the daughters of their falsely claimed ailments, and were instead fraudulently taken from Plaintiff for the personal benefit of VP and her associates in running a cult.

146.   Defendants are individuals and/or entities within the meaning of "person" as defined in 18 U.S.C. § 1961(3) because each is capable of holding, and does hold, "a legal or beneficial interest in property." The association is composed of Defendants VP, AUM, AUM Sacred Art, LLC, and DOES 1-50.

147.   18 U.S.C. § 1952 provides that "[w]hoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to (1) distribute the proceeds of any unlawful activity; … or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform— (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both."

148.   Plaintiff is informed and believes, and on that basis alleges, that Defendants traveled, and caused his daughters to travel, between Texas and California with the intent to distribute the proceeds of an unlawful activity, including among other things the fraudulent misrepresentations and unfair business practices regarding AUM's holistic treatment, as alleged in this Complaint.  Therefore, Defendants violated 18 U.S.C. § 1952.

149.   Section 1962(a) makes it:

unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which

3093812

affect, interstate or foreign commerce.

150.   Section 1962(c) makes it:

unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

151.   Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(a) and (c), among other provisions.

152.   Defendants are associated with each other and with the DOE defendants, who will be identified in discovery, as an enterprise within the meaning of "enterprise" as defined in 18 U.S.C. § 1961(4).

153.   Defendants have extorted hundreds of thousands of dollars from Plaintiff by fraudulently misrepresenting that his daughters were in danger and suffering from various mental health ailments which required Defendants' treatment.   The RICO enterprise, which all Defendants and the DOE defendants who will be identified in discovery have engaged in, and the activities of which have and continue to affect interstate and foreign commerce, is comprised of an association in fact of persons, including each Defendant and other unnamed co-conspirators currently identified as DOE defendants.  Defendants engaged in a mail and wire fraud scheme to recruit clients and indoctrinate them into the cult in order to manipulate clients into paying exorbitant sums for fraudulent treatments.

154.   The members of the RICO enterprise all share a common purpose:   to enrich the cult and its leader at their clients' expense by fraudulently misrepresenting the holistic treatments provided by AUM and VP.   As set forth herein, Defendants benefited financially from their scheme to defraud Plaintiff.

155.   This RICO enterprise has existed for at least three years and continues to expand and operate as it recruits new members into the scheme.  The RICO enterprise has functioned as a continuing unit and maintains an ascertainable structure separate and distinct from the pattern of racketeering activity.

3093812

156.   The enterprise is characterized by Defendants' pattern of false representations and omissions regarding its holistic treatment designed to manipulate Plaintiff and others into paying exorbitant sums for family members' treatment.  It was known by Defendants that their misrepresentations were false and that Plaintiff's daughters were not in danger or suffering from extreme mental health issues.

157.   Defendants profited from the enterprise, and Plaintiff suffered because the enterprise caused Plaintiff to pay hundreds of thousands of dollars for treatment, rent and other unnecessary expenses for his family members.  Defendants used the proceeds from this scheme to advance the scheme by funding and operating their recruitment of additional members into the cult, obtaining payments via electronic means over interstate wires, thereby growing the enterprise and causing further injury to Plaintiff.

158.   Defendants' scheme was reasonably calculated to deceive Plaintiff through the execution of their complex and illegal scheme to misrepresent—through affirmative misrepresentations and omissions—the severity of his daughter's mental health diagnoses which required immediate treatment costing a substantial amount of money.  Plaintiff would not have paid for this treatment or other expenses but for the illegal racketeering scheme operated by Defendants.

159.   Defendants each had the specific intent to participate in the overall RICO enterprise and the scheme to defraud Plaintiff, and each participated in the enterprise as follows:

160.   Defendant VP directs, controls, and participates in the activities of the enterprise in a variety of ways as set forth herein, including but not limited to engaging in the following: (a) recruiting members and clients by advertising AUM's fraudulent services on her website and social media; (b) directing clients to Richard and the Spookies for fraudulent readings; (c) demanding payment for fraudulent services and other expenses such as international trips, pookas, yagyas, jewelry made by AUM Sacred Art, LLC, food made by AUM Cuisine, compounded drugs made by VP, clothes, rent and tuition, often via interstate wire transfers; (d) manipulating members

Glaser
Weil

3093812

like Jane Doe 1 into relinquishing their parental rights so she can exert control over the children in an effort to extort additional payment for treatment.

161.    Defendant AUM directs, controls, and participates in the activities of the enterprise in a variety of ways as set forth herein, including but not limited to engaging in the following: (a) recruiting members and clients by advertising its fraudulent services on its websites and social media; (b) directing clients to Richard and the Spookies for fraudulent readings; and (c) receiving payments for fraudulent services and other expenses such as rent and tuition, often via interstate wire transfers.

162.    AUM's associates direct, control, and participate in the activities of the enterprise in a variety of ways as set forth herein, including but not limited to engaging in the following: (a) recruiting members into the AUM cult, allowing the scheme to grow larger and extort more people; (b) encouraging members to relinquish parental rights in an effort to extort additional payment for treatment; (c) exerting control over Jane Doe 2 and Jane Doe 3's lives by overseeing their comings and goings such as supervising pick ups and drop offs to and from their school; (d) housing Jane Doe 2 and Jane Doe 3 in a different state than their parents and collecting exorbitant rent payments; and (e) providing "healing" massages to clients in an effort to recruit them into the cult and extort exorbitant payments for fraudulent services.

163.    During the ten (10) years preceding the filing of this action and to the present, all Defendants did cooperate jointly and severally in the commission of three (3) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. § 1962(d), as described in this Complaint.

164.    Beginning at an exact date unknown to Plaintiff, but within ten (10) years preceding the filing of this action, Defendants have knowingly, willfully, and unlawfully participated in a pattern of racketeering activity that continues to this day.

165.    The acts set out in this Complaint and more to be uncovered in the course of discovery had the same pattern and purpose to defraud Plaintiff for the benefit of Defendants. Each act involved the same or similar methods of commission and

3093812

1  participants and affected Plaintiff similarly.

2        166.   Without the repeated predicate acts, the ability to conduct their fraud using
3  the mail and telecommunications wires, and the money laundering, Defendants'
4  business would not have succeeded.

5        167.   The separate acts all relate to each other in that they were part of concerted
6  actions by Defendants to use the endorsement and channels of the enterprise to operate
7  their businesses to fraudulently induce Plaintiff and others to become indoctrinated in
8  the cult and pay substantial sums of money for fraudulent services.

9        168.   Defendants' wrongful conduct has caused injury to Plaintiff, remains a
10 part of their ongoing business practices, and remains a continuing threat to Plaintiff and
11 the general public.

12       169.   Defendants' association with the enterprise enabled Defendants to
13 conduct, direct, and control a pattern of fraudulent, illegal activities over a substantial
14 number of years, which continues to this day.

15       170.   To further their goals, Defendants, working in concert, engaged in various
16 forms of criminal activity, including mail fraud and wire fraud.

17       171.   Defendants' ongoing pattern of racketeering activity has injured and
18 continues to injure Plaintiff.  Defendants' pattern of mail fraud and wire fraud was the
19 proximate cause of the injuries suffered by Plaintiff.

20       172.   Defendants voluntarily and intentionally devised and participated in a
21 scheme to defraud Plaintiff out of money, in reliance on the mail and wires. Defendants
22 committed these acts with the intent to defraud Plaintiff.

23       173.   Defendants used the mail, email, internet, and text and internet messaging
24 for the purpose of executing the fraudulent scheme herein.

25       174.   Specifically, Defendants used the mail, email, internet, and text and
26 internet messaging to advertise regarding their fraudulent services, as well as to solicit
27 and obtain payments they extorted from Plaintiff and other clients. This includes
28 Defendants retaining their wrongful control and custody over Plaintiff's daughters,

Glaser
Weil

such as enrolling them in private school in California despite their residence and parents being located in Texas.

175.   Defendants could not have furthered their fraud without the use of the mail, email, internet, and text and internet messaging.   Therefore, Defendants committed multiple acts of mail and wire fraud in violation of 18 U.S.C. § 1341 in furtherance of the enterprise.

176.   Defendants also voluntarily and intentionally devised and participated in a scheme to defraud Plaintiff out of money, in reliance on interstate wires. Defendants committed these acts with the intent to defraud Plaintiff in violation of 18 U.S.C. § 1343.

177.   Specifically,   Defendants   used   interstate   wires   to   disseminate advertisements of their fraudulent services, as well as solicit and obtain payments they extorted from Plaintiff and other clients. Defendants' racketeering scheme took place largely in California while Plaintiff was in Texas and he regularly sent payments from his bank accounts in Texas to Defendants' bank accounts in California.

178.   Defendants also used telecommunication wires to interact with AUM affiliates located outside of the United States such as Richard, who on information and belief is located somewhere in Europe, and the Spookies, who allegedly reside in India.

179.   Defendants could not have furthered their fraud without the ability to use the telecommunications wires to share information with other Defendants. Plaintiff has been proximately and actually harmed by Defendants' actions in the amount of over $650,000, plus all pre-judgment interest, as well as the loss of the ability to utilize this money for other investment purposes.

180.   Additionally, Defendants, and each of them, have acted willfully, knowingly, and without conscious disregard to Plaintiff's rights as alleged herein that the actions constitute malice, oppression, and/or fraud to the extent that punitive damages are warranted to punish the Defendants, and each of them, for their outrageous behavior as described herein.

3093812

181.  Plaintiff has suffered hundreds of thousands of dollars of damages as a result of Defendants' RICO violations in an amount to be proven at the time of trial and trebled under 18 U.S.C. § 1964(c).  Plaintiff is also entitled to an award of his attorneys' fees under 18 U.S.C. § 1964(c), in an amount to be proven at trial.

182.  Plaintiff further seeks an award of pre- and post-judgment interest on any and all damage awards made herein at the highest rate allowable under the law.

## SECOND CLAIM FOR RELIEF

### (Fraud and Undue Influence — Civ. Code §§ 1575, 1709, 1710)

### (Against All Defendants)

183.  Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

184.  On information and belief, during the period from late 2022 to present, Defendants knowingly and willfully defrauded Plaintiff by inducing him and Jane Doe 1 to pay over $650,000 for his daughters' mental health and medical treatment by representing to him that his daughters' lives were in danger without such treatment.

185.  Plaintiff and Jane Doe 1 relied on Defendants' representations regarding the diagnoses and treatment of Jane Doe 2 and Jane Doe 3 and that their businesses and services were legitimate. This reliance was reasonable and foreseeable, as VP and AUM held themselves out to be legitimate healers with strong qualifications and the best interests of his daughters in mind.

186.  On information and belief, Defendants intended for Plaintiff and Jane Doe 1 to rely on their representations despite knowing they were false.

187.  Plaintiff was injured by his and Jane Doe 1's reasonable and foreseeable reliance on Defendants' misrepresentations.  He and Jane Doe 1 at times jointly and at times Jane Doe 1 solely, over Plaintiff's objections, remitted monies from Plaintiff's accounts to Defendants.

188.  As a direct and proximate result of Defendants' fraudulent activity, Plaintiff has suffered damages as alleged herein and in an amount to be proven at trial,

3093812

but not less than $650,000.

189.   Defendants also exercised undue influence over Plaintiff, who was under duress at the times he was convinced to agree to make exorbitant payments for treatment of his daughters.

190.   Defendants advertised and offered for sale products, services, and treatments that they claim have healing, sacred, divine, or therapeutic properties that they do not have and which Defendants know or reasonably should know they lack. Under duress, Plaintiff and Jane Doe 1 paid for these products and services in desperate efforts to help their children after believing Defendants' lies about their conditions and how their products and services could help.

191.   Under Cal. Civ. Code § 1575, undue influence consists of three primary elements: (1) the use of confidence or authority by one party to obtain an unfair advantage over another; (2) taking unfair advantage of another's weakness of mind; or (3) taking grossly oppressive and unfair advantage of another's necessities or distress.

192.   Defendants, after establishing their authority over Plaintiff and his family using their cult tactics, exercised undue influence over Plaintiff by taking advantage of Plaintiff's weakness of mind and severe distress and concern for his children's safety and well-being by demanding exorbitant sums of money for treatment of his daughters after Defendants manipulated him into thinking his daughters' lives were in danger.

193.   Defendants also placed Plaintiff under duress by preventing him from seeing his daughter Jane Doe 2 in more than two years and making numerous claims about her suffering from severe mental health ailments, injuries, drug overdoses, and other crises that could only be cured by paying substantial sums to Defendants.

194.   Defendants acted with oppression, fraud, and malice at all relevant times, as they knew that their treatments were not legitimate. On information and belief, Defendants intended to and did cause injury to Plaintiff and engaged in despicable conduct with a willful and conscious disregard for the rights of others, subjecting Plaintiff to cruel and unjust hardship.

3093812

1    195.    Plaintiff is entitled to compensatory damages, attorneys' fees and costs,

2    interest, punitive and exemplary damages, and other legal and equitable remedies.

3    **THIRD CLAIM FOR RELIEF**

4    **(Constructive Fraud — Cal. Civ. Code § 1573)**

5    **(Against All Defendants)**

6    196.    Plaintiff incorporates and realleges all of the above paragraphs as though

7    fully set forth herein.

8    197.    As caregivers and persons who exercise custody over Plaintiff's minor

9    children, Defendants at all relevant times owe the parents and children a duty of care.

10    198.    As alleged herein, Defendants breached these duties by falsely diagnosing

11    Jane Doe 2 and Jane Doe 3 with severe mental health conditions, preventing them from

12    seeing their father for years, and isolating them from their friends and family.

13    199.    Defendants repeatedly misled and deceived Plaintiff to his prejudice and

14    detriment by creating false accusations and diagnoses for the purposes of gaining

15    control over the girls and forcing Plaintiff to pay exorbitant sums for their treatment.

16    200.    Defendants advertised and offered for sale products, services, and

17    treatments that they claim have healing, sacred, divine, or therapeutic properties that

18    they do not have and which Defendants know or reasonably should know they lack.

19    201.    Plaintiff reasonably and detrimentally relied on Defendants'

20    representations and did so under duress that was created by Defendants.

21    202.    As a proximate result of Defendants' misrepresentations and breach of

22    duties, Plaintiff has suffered and continues to suffer general and special damages in

23    amounts to be determined according to proof at trial.

24    203.    Furthermore, Defendants' misrepresentations constitute acts of

25    oppression, fraud, and/or malice, and thus give rise to punitive damages pursuant to

26    Section 3294 of the Civil Code.

27

28

3093812

# FOURTH CLAIM FOR RELIEF

## (Negligent Supervision)

## (Against Defendants VP and AUM)

204.   Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

205.   At all relevant times, VP was the leader of AUM and acted as an officer and an agent of the company.

206.   AUM owed a duty to exercise reasonable care in the supervision and oversight of its officers, including VP and her associates, especially in regard to treating and taking care of Plaintiff's minor children.

207.   Defendants had a special relationship with Jane Doe 2 and Jane Doe 3, given that VP and her AUM associates became their caretakers and/or guardians once their mother entrusted the children in their care when they moved to California. Defendants therefore had an affirmative duty to take reasonable steps to protect Jane Doe 2 and Jane Doe 3 from foreseeable risks of harm.

208.   Despite having an affirmative duty to take reasonable steps to protect the children from foreseeable risks of harm, VP acted outrageously by holding the children captive in the cult and preventing the children from seeing or contacting Plaintiff, which has caused him extreme distress.

209.   As a result of Defendants' conduct, Plaintiff suffered extreme and severe emotional distress.

210.   Defendants knew or should have known that their treatment methods were not safe or in the best interests of the minors, and that separating children from their families would have detrimental effects on both the children and parents.

211.   Defendants failed to supervise VP or implement reasonable safeguards to prevent the mistreatment of minors in their care.

212.   As a result of AUM's negligent failure to supervise VP, Plaintiff suffered substantial financial damages.

3093812

213.  Plaintiff is entitled to compensatory damages resulting from AUM's negligent conduct.

214.  As direct and legal result of Defendants' above-described intended acts and conduct, Plaintiff has suffered and continues to suffer great psychological and emotional distress, as well as feelings of embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and will continue to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

215.  The children will require extensive psychological counseling, therapy, and treatment to recover from their trauma and manipulation by Defendants.  Defendants should be held liable to cover the costs of their therapy to help them recover from the trauma inflicted on them by Defendants.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

### (Against All Defendants)

216.  Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

217.  At all relevant times, Plaintiff was the owner and rightful possessor of the funds that were sent to Defendants for purposes of treating his daughters.

218.  Defendants advertised and offered for sale products, services, and treatments that they claim have healing, sacred, divine, or therapeutic properties that they do not have and which Defendants know or reasonably should know they lack.

219.  Defendants intentionally and wrongfully exercised control over Plaintiff's funds transmitted to them in exchange for these falsely-described products, services, and treatments without the knowing, authorized, and informed consent of Plaintiff.

220.  As a direct and proximate result of Defendants' unauthorized use of the

3093812

1   funds, Plaintiff has suffered damages in an amount to be proven at trial, but not less

2   than $650,000.

3       221.   Defendants' conduct was willful, fraudulent, and malicious, and carried

4   out with conscious disregard for the rights of Plaintiff, entitling Plaintiff to an award of

5   punitive and exemplary damages pursuant to Cal. Civ. Code § 3294.

### SIXTH CLAIM FOR RELIEF

### (Theft by False Pretenses)

### (Against All Defendants)

9       222.   Plaintiff incorporates and realleges all of the above paragraphs as though

10  fully set forth herein.

11      223.   California Penal Code § 496(c) reads: "Any person who has been injured

12  by a violation of subdivision (a) or (b) may bring an action for three times the amount

13  of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable

14  attorney's fees." Section 496(a) makes receiving, buying, or withholding property "that

15  has been obtained in any manner constituting theft" an act punishable by imprisonment.

16  In turn, section 496(c), applies that statute in civil cases. (*Bell v. Feibush* (2013) 212

17  Cal.App.4th 1041.)

18      224.   The "theft" referred to in Section 496 includes theft by false pretenses (i.e.,

19  the consensual but fraudulent acquisition or retention of property from its owner).

20  (*See* Cal. Pen. Code, § 484(a).)

21      225.   Over the course of the last two years, Defendants have retained, and

22  refused to return, over $650,000 fraudulently obtained from Plaintiff.

23      226.   Defendants continue to wrongfully withhold the money from Plaintiff.

24      227.   As a result of Defendants' wrongful acts and omissions, Plaintiff has

25  suffered damages.

26      228.   In addition, California Penal Code § 496(c) provides for treble damages

27  and attorneys' fees and costs.

28      229.   Defendants are subject to exposure for punitive damages based upon their

3093812

acts of malice, oppression and fraud as those words are used and defined in Civil Code § 3294.

### SEVENTH CLAIM FOR RELIEF

### (Unfair Competition – Violation of Cal. Bus & Prof. Code §§ 17200 *et seq.*)

### (Against All Defendants)

230.   Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

231.   Defendants have engaged in and continue to engage in, have aided and abetted and continue to aid and abet, and have conspired to and continue to conspire to engage in business acts or practices that constitute unfair competition as defined in the Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200 *et seq*., in that such business acts and practices are unlawful, unfair, and fraudulent within the meaning of that statute.

232.   The business acts and practices engaged in by Defendants that violate the Unfair Competition Law include making fraudulent representations regarding their services and qualifications in order to extort exorbitant payment and manipulating parents to relinquish control and custody of their minor children under the guise of providing mental health treatment.

233.   Defendants advertise and offer for sale products, services, and treatments that they claim have healing, sacred, divine, or therapeutic properties that they do not have and which Defendants know or reasonably should know they lack.

234.   These business acts and practice are unlawful because they violate laws including:

      a.  Business and Professions Code § 17500, as set forth herein;

      b.  RICO, as set forth herein;

      c.  Federal and state laws and regulations, including those precluding misrepresentations; and

      d.  15 U.S.C. § 45(a).

3093812

235.   These business acts and practices are unfair in that Defendants have caused Plaintiff to relinquish his parental control over his young daughters as well as pay hundreds of thousands of dollars under the guise of mental and physical care for his daughters.   These acts and practices violate public policy and are also immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers like Plaintiff.

236.   These business acts and practices are fraudulent in that Defendants' untrue and misleading representations and omissions regarding the holistic care they provide are likely to, and in fact have, deceived the public.

237.   As a result of Defendants' unlawful, unfair, and fraudulent business acts and practices, Plaintiff is entitled to an order, pursuant to Cal. Bus & Prof. Code § 17203, enjoining such future conduct and such other orders and judgments that may be necessary to provide restitutionary disgorgement of Defendants' ill-gotten gains and to restore to Plaintiff all monies paid as a result of Defendants' conduct.

**EIGHTH CLAIM FOR RELIEF**

**(False Advertising – Violation of Cal. Bus & Prof. Code §§ 17500 *et seq.*)**

**(Against All Defendants)**

238.   Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

239.   From a date unknown to Plaintiff and continuing to the present, Defendants, and each of them, have engaged in and continue to engage in, aided and abetted and continue to aid and abet, and conspired to and continue to conspire to engage in acts or practices that constitute violations of Cal. Bus. & Prof. Code §§ 17500 *et seq.*, by making or causing to be made untrue or misleading statements with the intent to induce members of the public to purchase Defendants' products and services.

240.   Defendants' untrue or misleading representations to Plaintiff include, but are not limited to oral affirmative misrepresentations and omissions to Plaintiff that his daughters were in severe danger as a result of their mental health and required

3093812

1    expensive treatment that only VP or AUM could provide.

2        241.   The representations, among many others by Defendants, that Plaintiff's

3    daughters suffer from various mental health ailments and that their lives were in danger

4    were false or misleading, or were not substantiated at the time the representations were

5    made.

6        242.   Defendants' advertisements that their products, services, and treatments

7    would help Plaintiff and his family in various ways or had healing or therapeutic or

8    magical or divine qualities and properties were false, misleading, and deceptive.

9        243.   Defendants' representations that they communicate with divine spirits, the

10   spirits of deceased persons, and spiritual masters and guides whose advice Plaintiff and

11   other members of the public pay for, are false, misleading, and deceptive.

12       244.   At the time the representations set forth in the preceding paragraphs were

13   made, Defendants knew or by the exercise of reasonable care should have known that

14   the representations were untrue or misleading.

15       245.   As a result of Defendants' untrue or misleading representations or

16   omissions, Plaintiff is entitled to an order, pursuant to Cal. Bus. & Prof. Code § 17535,

17   enjoining such future conduct by Defendants and such other orders and judgments that

18   may be necessary to provide restitutionary disgorgement of Defendants' ill-gotten gains

19   and to restore to Plaintiff all monies paid as a result of Defendants' false or misleading

20   statements.  Plaintiff is also entitled to and seeks his attorneys' fees and costs.

21                            **NINTH CLAIM FOR RELIEF**

22   **(Violation of California's Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1)**

23                           **(Against All Defendants)**

24       246.   Plaintiff incorporates and realleges all of the above paragraphs as though

25   fully set forth herein.

26       247.   Cal. Civ. Code § 52.1, the Bane Act, provides that it is unlawful to

27   interfere with the exercise or enjoyment of any rights under the Constitution and laws

28   of this state and the United States by use or attempted use of threats, intimidation or

49

COMPLAINT

3093812

coercion.  As alleged herein, Defendants, by threats, intimidation or coercion, caused Plaintiff to reasonably believe that if he exercised his rights under this State's Constitution and retained physical custody of his daughters, Defendants would commit violence against him and that Defendants had the apparent ability to carry out the threats.

248.   When Plaintiff recommended informing the authorities that, according to Defendants' allegations, his father had molested over thirty women and girls, Defendants instead threatened to inform his employer that he was harboring a pedophile by allowing his father to live with him and made similar threats that Plaintiff interpreted as violent.

249.   Additionally, Defendants claimed that, unless Plaintiff's daughters were under the care of Defendants, the daughters would travel to Mexico as part of a human trafficking scheme, which Plaintiff interpreted as a violent threat to himself and his daughters.  Defendants have also implanted false memories of abuse and homicidal ideation in the minor children.

250.   Defendants have also engaged in the despicable act of attempting to perform conversion therapies on Jane Doe 2 in order to "cure" her "sexual deviance" and prevent her from being queer or lesbian or from associating with transgender friends, all in deprivation of her civil liberties and in violation of her father's parental rights that object to these hideous practices.

251.   Defendants threatened to act violently against Plaintiff to prevent him from exercising his rights under the State's Constitution.

252.   Defendants intended to deprive Plaintiff of his enjoyment of the interests protected by the rights afforded to him.

253.   Plaintiff was harmed by losing his relationship with his daughters and spouse as well as custody of his daughters as a result of Defendants' threats and actions.

254.   Defendants' conduct was a substantial factor in causing Plaintiff's harm.

255.   Plaintiff  is  informed  and  believes  and  on  that  basis  alleges  that

3093812

Defendants' conduct, and each of them, denied, aided, or incited a denial of, discriminated or made a distinction that denied Plaintiff full and equal advantages, and privileges, and therefore constituted a violation of the Bane Act.

256.   As a further direct and proximate result of Defendants' conduct, Plaintiff suffered anxiety, worry, embarrassment, humiliation, injury to his reputation, mental anguish, and emotional distress, in an amount to be proven at trial.  Plaintiff is further entitled to recover reasonable attorneys' fees, costs, and pre-judgment interest in connection with this matter.

257. Defendants committed the acts alleged herein maliciously and fraudulently, with the wrongful intention of injuring Plaintiff and with an improper and evil motive rising to the level of malice, in conscious disregard of Plaintiff's rights. Because the acts taken towards Plaintiff were carried out by managerial employees acting in a despicable, cold, callous, and intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive damages from Defendants.

## TENTH CLAIM FOR RELIEF

## (Violation of California's Ralph Civil Rights Act — Cal. Civ. Code § 51.7)

## (Against All Defendants)

258.   Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

259.   Cal. Civ. Code § 51.7, the Ralph Act, provides that persons have the right to be free from violence or threat of violence, committed against their persons or property because of, among other things, their political affiliation, religion, ancestry, or national origin – or because another person perceives them to have one or more of those characteristics.

260.   As alleged herein, Defendants intimidated Plaintiff and his minor children with threats of violence.

261.   As alleged herein, Plaintiff's perceived or actual religion, ancestry, or national origin and his daughter's sexual orientation and gender identity was the

3093812

1  substantial motivating reason for Defendants' unwanted threats of violence.

2      262.   Defendants began making threats of violence once it was clear to them
3  that Plaintiff no longer subscribed to AUM's system of beliefs and was not
4  indoctrinated into their cult, and therefore they began to threaten violence because they
5  perceived him to subscribe to a different system of beliefs.

6      263.   Plaintiff was harmed by Defendants' unlawful conduct.

7      264.   Defendants' conduct was a substantial factor in causing Plaintiff's harm.

8      265.   As a further direct and proximate result of Defendants' aforementioned
9  conduct, Plaintiff suffered anxiety, worry, embarrassment, humiliation, injury to his
10  reputation, mental anguish, and emotional distress, in an amount to be proven at trial.
11  Plaintiff is further entitled to recover reasonable attorneys' fees, costs, and pre-
12  judgment interest in connection with this matter.

13      266.   Defendants committed the acts herein alleged maliciously and
14  fraudulently, with the wrongful intention of injuring Plaintiff and with an improper and
15  evil motive rising to the level of malice, is conscious disregard of Plaintiff's rights.
16  Because the acts taken towards Plaintiff were carried out in a despicable, deliberate,
17  cold, callous, and intentional manner in order to injure and damage Plaintiff, Plaintiff
18  is entitled to recover punitive damages from Defendants.

19                    **ELEVENTH CLAIM FOR RELIEF**
20          **(Violation of the FTC Act — 15 U.S.C. § 45)**
21                      **(Against All Defendants)**

22      267.   Plaintiff incorporates and realleges all of the above paragraphs as though
23  fully set forth herein.

24      268.   Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or
25  deceptive acts or practices in or affecting commerce."

26      269.   Misrepresentation or deceptive omissions of material fact constitute
27  deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

28      270.   Defendants have made various representations or deceptive omissions of

material fact in regards to their holistic treatment and practices, and specifically the false and fraudulent and harmful diagnoses of Plaintiff's young daughters.

271.    The representations, among many others by Defendants, that Plaintiff's daughters suffer from various mental health ailments and that their lives were in danger were false or misleading, or were not substantiated at the time the representations were made.

272.    Defendants' advertisements that their products, services, and treatments would help Plaintiff and his family in various ways or had healing or therapeutic or magical or divine qualities and properties were false, misleading, and deceptive.

273.    Defendants' representations that they communicate with divine spirits, the spirits of deceased persons, and spiritual masters and guides whose advice Plaintiff and other members of the public pay for, are false, misleading, and deceptive.

274.    Defendants' representations constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

275.    Defendants committed the violations set forth in the paragraphs above with the knowledge required by 15 U.S.C. § 45(m)(1).

276.    Plaintiff has suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and respectfully requests the following relief:

1.    For orders preliminarily and permanently enjoining Defendants from continuing to engage in unfair, false, and fraudulent business practices;

2.    For orders preliminarily and permanently enjoining Defendants from maintaining custody or control over Plaintiff's daughters and from having any further contact or communication with Plaintiff or his daughters, either directly or indirectly;

3.    For his minor children's immediate return to Plaintiff's custody;

4.      For past, present, and future general and compensatory damages in an amount to be determined at trial;

5.      For past, present, and future special damages, including but not limited to past, present, and future lost earnings, emotional distress damages, rehabilitation expenses for his children, economic damages and others, in an amount to be determined at trial;

6.      For statutory damages including, but not limited to, attorneys' fees incurred by Plaintiff in this action;

7.      For costs of suit;

8.      For pre- and post-judgment interest to the extent allowable by law;

9.      For attorneys' fees to the extent allowable by law;

10.     For treble damages to the extent allowable by law under 18 U.S.C. 1964(c) and Cal. Pen. Code § 496(c);

11.     For exemplary and punitive damages in an amount to be determined at trial;

12.     For restitution and disgorgement; and

13.     For such other further relief as the court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in this case on all issues so triable.


DATED:  July 31, 2025                    Respectfully submitted,

                                         GLASER WEIL FINK HOWARD
                                            JORDAN & SHAPIRO LLP

                                                 */s/ Alina Gatto*
                                         By: _____
                                              Elizabeth A. Sperling
                                              Alina Gatto
                                              Attorneys for Plaintiff John Doe

Glaser Weil

3093812