Jon Michaelson, Esq. (SBN: 83815)
jmichaelson@structurelaw.com
Ethan Solove, Esq. (SBN: 308026)
esolove@structurelaw.com
Sonya Tamiry, Esq. (SBN: 312673)
stamiry@structurelaw.com
STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
San Jose, California 95110
Telephone: (408) 441-7500
Facsimile: (408) 441-7501

Attorneys for Defendants
Vaidya Priyanka, Aum Ayurveda, and Aum Sacred Art, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>VAIDYAJI PRIYANKA, AKA PRIYA RAVI, AKA PRIYA GANESH RAVI, AKA PRIYANKA VAIDYA, an individual; AUM AYURVEDA, d/b/a AUM CUISINE, d/b/a AUMCUISINE, d/b/a AUM VEDIC WELLNESS, a business of unknown type or origin; AUM SACRED ART, LLC, a California limited liability company, and DOES 1-50, inclusive,<br><br>        Defendants. | CASE NO. 5:25-cv-06465-PCP<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND FOR LEAVE TO PROCEED ANONYMOUSLY**<br><br>Date:   October 30, 2025<br>Time:  10:00 a.m.<br>Place:  Courtroom 8, 4th Floor |

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................................1

II.   RELEVANT FACTS ............................................................................................................1

III.  APPLICABLE LAW .............................................................................................................5

IV.   ARGUMENT .........................................................................................................................6

  A.  "John Doe" Is Not Entitled to Proceed Anonymously Because His Actual Identity Was Known and Continues to be Known Publicly ........................................................................6

  B.  "John Doe" Has Not Satisfied the Requirements for Proceeding Under a Fictitious Name Based on Fear of Retaliation .................................................................................................7

  C.  "John Doe" Has Not Satisfied the Requirements for Proceeding Under a Fictitious Name to Protect His Privacy Interest ..............................................................................................10

V.    CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Dept. of Fair Emp't & Housing v. Law Sch. Admission Council, Inc.* (N.D. Cal. 2012) WL 3583023 ................................................................................................................. 6

*Doe v. Aetna Life Insurance Company* (D. Mass. 2016) WL 7799638 ........................................ 6

*Doe v. Bell Atlantic Business Services, Inc.* (D. Mass. 1995) 162 F.R.D. 418 .......................... 5, 11

*Doe v. County of El Dorado* (E.D., Cal. 2013) WL 6230342 ....................................................... 6

*Doe v. Frank* (11th Cir.1992) 951 F.2d 320 ................................................................................. 11

*Doe v. Kamehameha Schs*. (9th Cir. 2010) 596 F.3d 1036 ................................................. 5, 10, 12

*Doe v. Porter* (6th Cir. 2004) 370 F.3d 558 ................................................................................. 12

*Doe v. Stegall* (5th Cir. 1981) 653 F.2d 180 ................................................................................ 12

*Doe v. University of Rhode Island* (D. R. I.) 1993 WL 667341 ..................................................... 5

*Doe v. Word of Life Fellowship, Inc*. (D. Mass.) 2011 WL 2968912 ............................................. 5

*Does I thru XXII v. Advanced Textile Corp*. (9th Cir. 2000) 214 F.3d 1058 ........... 5, 7, 8, 9, 10, 12

*Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe* (5th Cir. 1979) 559 F.3d 707 ............................................................................................................................ 11

*United States v. Doe* (9th Cir. 1981) 655 F.2d 920 ....................................................................... 5

*United States v. Stoterau* (9th Cir. 2008) 524 F.3d 988 ................................................................ 5

**Statutes**

Federal Rules of Civil Procedure Rule 10(a) ................................................................................. 5

## I. INTRODUCTION

Too late. Before filing this action, "John Doe" disclosed his own identity and the names of his wife and children in a separate judicial proceeding he initiated where his allegations overlap what he has claimed before this Court. Multiple submissions in the prior proceeding – replete with references to his name, that of his wife, and that of each of his daughters – have been and remain publicly available. Similarly, and again before commencing this case, "John Doe" included his name and that of his wife, along with information about charges he planned to make before this Court, in letters to individuals who are not parties in any earlier action or in this proceeding. Wholesale disclosures render "John Doe's" motion (ECF 8) moot.

Too little. Even if "John Doe" – by his own acts – had not eliminated the possibility of remaining anonymous, he cannot show that this is the exceptional case where a party is allowed to proceed under a fictitious name. In particular, "John Doe" has not demonstrated credible fear of retaliation and has not advanced any privacy interest that would justify the motion at hand.

## II. RELEVANT FACTS

"John Doe" and his wife and children lived in Texas. In 2023, at her initiative and with her parents' consent and support, their elder daughter moved to California to attend a private Catholic high school in San Jose for her junior and senior years. The parents made arrangements for the child to live with family friends residing near the school. The daughter thrived, graduated summa cum laude, and navigated the college application process. She is set to begin classes at UC Davis next week, and will turn 18 years old in November. Declaration of Jon Michaelson ("Michaelson Decl."), Ex. A at 020); Declaration of "Jane Doe 1" ("JD1 Decl.") ¶ 8.

Meanwhile, starting in 2024 the younger daughter (today age 14) lobbied "John Doe" and his wife "Jane Doe 1" for permission to attend high school in California. With both parents participating, the child applied to, visited, and in March 2025 was accepted for admission as a freshman at a private Christian high school in San Jose. Both parents approved and made plans for the younger daughter to live with a relative in the area for this purpose.[1] Michaelson Decl.,

---

[1] The younger daughter has now started at the school. JD1 Decl. ¶ 8.

- 1 -
DEFENDANTS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND FOR LEAVE TO PROCEED ANONYMOUSLY

Ex. A at 020, 021.

However, in May 2025 a problem arose. The elder daughter called her parents to tell them that her grandfather ("John Doe's" father), who had been living in the family home, had abused her starting when she was 9 years old. For "Jane Doe 1" at least, this news was devastating – yet in her own words, "[i]t finally made sense as to why our daughters had wanted so desperately to move to California for high school." Michaelson Decl., Ex. A at 021. In early June, the younger daughter left for California. *Id*.

The revelation about "John Doe's" father impacted the marriage. Soon after the younger daughter departed to California, "John Doe" relocated his father from the family home in Texas to India. Still, tensions remained. A few days later, "John Doe" initiated divorce proceedings in Texas. There, he sought full custody of both children. *Id*. at 008, 028.

With the daughters in California (beyond immediate reach of a Texas court), on July 11, 2025, "John Doe" filed a petition in Santa Clara County Superior Court for exclusive custody of the daughters. In his petition and subsequent filings in that case, "John Doe" did not employ any pseudonyms. He used his own name, his wife's actual name, and the actual names of their daughters. The docket for this case is available on-line through the Superior Court's website (https://santaclaracourts.ca.gov/); the docket lists each of these actual names. The Santa Clara Superior Court file in the case is public. [2] Michaelson Decl., Ex. A; JD1 Decl. ¶2.

Soon after "John Doe" began his California state court action, additional information came to light regarding the daughters' desire to attend high school away from home. In July, the younger daughter revealed that she had been abused by "John Doe" himself (not his father) as recently as 3 months earlier. Soon after, the older daughter made similar disclosures to her therapist. Formal reports have been lodged with child protective agencies in California and Texas. Michaelson Decl., Ex. A at 021-022; JD1 Decl. ¶ 4.

---

[2] We do not know whether "John Doe's" filings in Texas are available to the public there. Nonetheless, "John Doe" provided copies of some of his Texas filings to the Santa Clara County Superior Court. Those Texas filings, which again are available here, contain his actual name as well as the names of his wife and children.

Also by July, "John Doe" was trying to cast blame on Defendant Vaidya Priyanka and her wellness center Aum Ayurveda for his predicament. He contended that there was a "cult" at work that had "kidnapped" his children and "brainwashed" them into making false accusations of abuse, and had misled his wife into believing those reports. Michaelson Decl., Ex. A at 012-015. These allegations, advanced in the case in Santa Clara County by "John Doe" under his own name and referring to his wife and daughters by their actual names – all in the public record – overlap what he now wants to litigate anonymously before this Court.

The connection between the Santa Clara Superior Court proceeding and litigation in this Court is cemented by "John Doe" in his own words. In the Complaint here, he alleges that "custody proceedings [are] underway in both Texas and California family courts." ECF 1 ¶ 137. Anyone reading the file in his Santa Clara case would learn that "John Doe" was bringing suit in this Court based, among other things, on alleged "undue influence," "abduction," and "endangerment" of the daughters by the same "cult" supposedly responsible for his family travails. *Compare, e.g.,* Michaelson Decl., Ex. A at 012-015 with ECF 1 ¶¶ 19-21, 69-136.

"Jane Doe 1" has contested "John Doe's" Santa Clara custody request and has disputed his substantive allegations. Michaelson Decl., Ex. A at 017-024. Her submissions – like his – name names and are matters of public record. Hearing on the petition is currently set to take place September 30, 2025 in open court. *Id.* at 004-005.

Meanwhile, on August 15, 2025, each daughter filed a petition for issuance of a temporary restraining order against their father. Michaelson Decl., ¶¶3, 4 and Exs. B, C; JD1 Decl. ¶9. Docket information for both matters is available via the Santa Clara Superior Court website, while filings are available through the court Clerk. Case materials include party names for each daughter and for "John Doe." Hearing on these applications is set for October 1, 2025. Michaelson Decl., Ex. B at 054. Ex. C at 076.

None of the above is to involve this Court in deciding disputes within the "John Doe" family. Those questions are for the Santa Clara Superior Court to resolve. For present purposes the relevant facts are that identities of the immediate members of the " John Doe" family are known, were freely revealed by "John Doe" in his own filings before he submitted his Complaint

and made the motion at hand in this case, and continue to be accessible to the public.

Moreover, pre-litigation disclosures by "John Doe" go beyond state court filings. In July – before initiating this case – "John Doe" sent letters broadcasting the very issues presented to this Court. Michaelson Decl. ¶5; JD1 Decl. ¶3. Several such letters were delivered to parties herein, but others went to individuals who were not sued but rather have been described by "John Doe" as alleged members of the "cult." Michaelson Decl. ¶5; *see* ECF 1 ¶¶ 70. 77. Still other letters were sent to uninvolved individuals, such as to a couple who teach meditation, and to an employee of a financial advisory group at Wells Fargo Bank. Michaelson Decl. ¶5.

In these letters, "John Doe" is identified by name, as is "Jane Doe 1." The letters detail Defendants' supposed "cult," its purported operation and alleged wrongful acts, and claimed impact on "John Doe" and members of his family. Further, the letters included an enclosure in the form a lengthy draft pleading that provides "John Doe's" actual identity on the caption page, identifies both "John Doe" and "Jane Doe" by name in the text, and contains nearly all allegations now set forth in the "John Doe" Complaint. Michaelson Decl. ¶ 5, Ex. D.

* * * *

In his declaration in support of the motion at hand (ECF 8-1), "John Doe" claims that Ms. Priyanka threatened a friend of his and "made numerous threats of retaliation to me." *Id*. at ¶2. He also alleges that Ms. Priyanka previously threatened to contact his employer about his "harboring a pedophile" (*id*. ¶6) and that "public disclosure of my and my wife's identities will give [Ms. Priyanka] further reason to retaliate by manipulating my children more severely and encouraging her followers to do the same." *Id*. at ¶7. As explained and discussed below, these conclusory accusations lack even minimal necessary detail and weight.

Ms. Priyanka has submitted with this Opposition a declaration refuting these charges.

"Jane Doe 1" has also submitted a declaration. There, she rebuts statements by "John Doe" of which she has knowledge. "Jane Doe 1" rejects the notion that anonymity would be beneficial to anyone involved in the case, and notes that she has no objection to being referred to by her actual name in this proceeding. JD1 Decl. ¶¶2, 6.

//

### III.     APPLICABLE LAW

Rule 10(a) of the Federal Rules of Civil Procedure requires that a complaint "name all of the parties." The "default presumption is that plaintiffs will use their true names" because of "the paramount importance of open courts." *Doe v. Kamehameha Schs*. (9th Cir. 2010) 596 F.3d 1036, 1046 (upholding district court decision to not allow plaintiffs, who were minor children, to proceed anonymously in a reverse discrimination lawsuit despite fears of retribution). Pseudonyms are allowed only in the unusual case. *E.g., United States v. Doe* (9th Cir. 1981) 655 F.2d 920, 922n. 1 (anonymity granted where prison informant established substantial risk of bodily harm); *United States v. Stoterau* (9th Cir. 2008) 524 F.3d 988, 1012 (rejecting anonymity request by a convicted sex offender). Applying these broad principles, courts have addressed several types of situations differently.

In very rare circumstances where, as in this case, prior disclosure of identity has taken place, the general conclusion is that a motion to proceed anonymously is moot. *E.g., Doe v. Word of Life Fellowship, Inc*. (D. Mass.) 2011 WL 2968912 *2 ("Since [the party's] identity is already accessible to the public, permitting a pseudonym…would not result in any more exposure than what already occurred"); *Doe v. Bell Atlantic Business Services, Inc.* (D. Mass. 1995) 162 F.R.D. 418, 422 (because plaintiff's true identity had been revealed in earlier administrative proceedings, request deemed "effectively moot"); *Doe v. University of Rhode Island* (D. R. I.) 1993 WL 667341 (request denied despite compelling reasons to maintain anonymity because plaintiff's identity was known in connection with a related case).

In matters where a party contends, as has "John Doe," that he fears retaliation if his name is used, the Ninth Circuit has directed district courts to balance five factors: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; (3) the anonymous party's vulnerability to such retaliation; (4) prejudice to the opposing party; and (5) public interest. *Does I thru XXII v. Advanced Textile Corp*. (9th Cir. 2000) 214 F.3d 1058, 1068.

And in situations involving privacy as a reason for the request, the list of factors to be balanced is shorter: (1) need for anonymity to protect the moving party from injury or harassment; (2) prejudice to the opposing party; and (3) public interest. *E.g., Dept. of Fair Emp't*

& *Housing v. Law Sch. Admission Council, Inc.* (N.D. Cal.) 2012 WL 3583023 at *2-3.

"John Doe's" request is untenable under applicable authorities.

### IV.   ARGUMENT

**A.  "John Doe" Is Not Entitled to Proceed Anonymously Because His Actual Identity Was Known and Continues to be Known Publicly**

In comparison to the facts recited in the three district court *Doe* decisions cited in the previous section, "John Doe's" argument for anonymity is far weaker if not entirely unavailing. The prior disclosures he himself made are more extensive than what occurred in any of those cases and took place not only before he filed his Complaint in this Court but afterwards as well. "John Doe" moved ahead under his name in state court while ***at the same time*** hiding behind a cloak of secrecy in the case at hand.  He cannot have it both ways, and his request should be denied accordingly as moot.  There is no magic wand "John Doe" can wave to make information already in the public domain disappear.

This conclusion is strengthened by reference to the even more rare circumstances where a district court has permitted anonymity despite prior identification.  In *Doe v. County of El Dorado* (E.D. Cal.) 2013 WL 6230342 at *6, for example, mootness (couched in terms of waiver) was rejected because plaintiff's actual name had not been disclosed.  Instead, the information available previously was the name of a business that might have been connected with the plaintiff. As the court stated, potentially identifying information is not the same as actual identification that would support rejection of an anonymity request as moot.  Here by contrast, nothing is merely potentially identifying: "John Doe" plastered his own actual name across court filings and letters to third parties.

In another of these very infrequent instances, the court in *Doe v. Aetna Life Insurance Company* (D. Mass.) 2016 WL 7799638, allowed the plaintiff to proceed anonymously despite the fact that her true name appeared in prior litigation.  It did so because the plaintiff demonstrated that in the earlier case she had made concerted efforts to remove her name from the proceeding, because the breadth of the two cases was different – including that issues presented in the subsequent case were not raised in the previous one, because most if not all

potentially relevant records from the previous case were no longer available, and because the plaintiff was mentally ill (with two treating professionals attesting that her condition would be exacerbated if her name were used).

"John Doe" has no such compelling basis to remain nameless. He has not sought to remove his name from matters pending in Superior Court, he cannot argue that issues presented in state proceedings are not encompassed by his Complaint, he cannot aver that records in Santa Clara are no longer available, and he has not attempted to show that he has a deteriorated mental health or any other condition that would be further jeopardized if he proceeds in this case under his true name. "John Doe's" motion should be denied for the independent reason that it is moot.

### B. "John Doe" Has Not Satisfied the Requirements for Proceeding Under a Fictitious Name Based on Fear of Retaliation

"John Doe's" failures to meet the applicable test on this score are highlighted by comparing the facts of this case to those underlying the Ninth Circuit's paradigm decision in *Advanced Textile*, *supra*, 214 F.3d 1058. In *Advanced Textile*, the plaintiffs were foreign garment workers on the island of Saipan who feared that if their identities were disclosed in Fair Labor Standards Act litigation they would, among other things, be fired, deported, and subject to imprisonment by the People's Republic of China. Reversing a district court decision, the Ninth Circuit panel held that the workers could proceed anonymously because they had "an objectively reasonable fear of extraordinarily severe retaliation." *Id.* at 1063. No such conclusion is possible for "John Doe."

First, in order to show severity of threatened harm the workers in *Advanced Textile* provided evidence of threats beyond what might be considered typical in an FLSA suit (such as termination and blacklisting). This included deportation, the burden of having to pay debts owed to recruiting agencies following termination, and possible legal action in China attributable to those debts that could result in incarceration. *Id*. at 1071. "John Doe" has no such evidence. He fails to relate what Defendant Ms. Priyanka said when she allegedly "called and harassed" his friend. *See* ECF 8-1 ¶3. He fails to describe any harassment. *See id*. He fails to relate any part or aspect of the substance of threats supposedly directed to the friend. *See id*. He fails to

relate what the "intimidating behavior" involved was. *See id.* And in the same passage he fails to describe even one of the "numerous threats of retaliation" purportedly addressed to him. *See id.* As a result, he has not given this Court any basis by which the severity of any threats he claims to fear can be assessed.

Nor does "John Doe's" statement that Ms. Priyanka "previously threatened" to make a report to his employer (*id.* ¶6) --- even if worthy of belief (which it is not) -- alter this conclusion. "John Doe" omits the simple but essential detail as to when this alleged threat was made. If the alleged threat was made a year, six months, or even one month prior, but was never acted upon (as must be assumed because "John Doe" does not say otherwise), it was at best empty. Someone in "John Doe's" position and with his high level of intelligence and education would realize it was empty, as would the ordinary reasonable person. Idle threats do not equate to severe harm.

And unlike the workers in *Advanced Textile*, "John Doe" has not offered any information by which the Court can evaluate whether involvement in "harboring a pedophile" being reported to his employer would have any impact let alone a severe one. He says nothing whatsoever about his employer, and makes no suggestion as to how that particular company might react to such a report. "John Doe" cannot establish that any supposed threat he now says he faced on an unknown date involving an unknown employer he does not describe in any fashion was extraordinarily severe. "John Doe's" barren record does not meet the test.

Second, the plaintiffs in *Advanced Textile* presented evidence indicating that their fear was reasonable, such as information that the Chinese government punished workers for complaining about working conditions abroad. 214 F.3d at 1065, 1071. Here, "John Doe's" "evidence" is that he fears "retaliatory intentions" because he has "disrupted their operations and called their legitimacy into question." ECF 8-1 ¶6. That does not come close. "Retaliatory *intentions*" are not the same thing as actual retaliation. "John Doe" fails to describe any act of actual retaliation that took place relative to him that is relevant to this case. Nor does he provide any detail to substantiate or even suggest a whiff of proof for his conclusory and speculative contention that he "disrupted" the "cult" or impaired its reputation.

Likewise, "John Doe" cannot demonstrate that his fear was or is reasonable based on

- 8 -

unsubstantiated conclusory contentions that his wife and children had been "brainwashed" (*id*. at ¶7), speculation that Ms. Priyanka would "manipulate [his] children more severely" if his name was known (*id*.), or further speculation that she would "[encourage"] her followers to do the same." *Id*. "John Doe" offers no **facts** to indicate that any of this is real or **facts** showing that any of it can be connected to his name appearing in the caption of a lawsuit. Moreover, these contentions are contradicted directly not only by Ms. Priyanka but by "John Doe's" wife and daughters as well. JD1 Decl. ¶¶4, 7-9.

Reasonableness of "John Doe's" alleged fear is further undermined by his own actions. If he in fact feared retaliation from Ms. Priyanka and her "cult," he would have taken steps to prevent them from being able to learn his name from filings in Santa Clara Superior Court. He also would not have sent his late July letters not merely to the Defendants, but also to individuals he claims in his pleading are adherents of the "cult." If one is genuinely concerned about being bitten by a bear, it is not wise to poke it.

Third, the workers in *Advanced Textile* were extraordinarily exposed to retaliation, including but not limited to the facts that they did not have freedom to obtain alternative employment, faced near immediate deportation if they angered the employer, and lived in company housing which some of them were not permitted to leave without permission. 214 F.3d at 1072. By contrast, "John Doe" cannot demonstrate extraordinary exposure – and has not even attempted to do so. "John Doe" lives in Texas, nearly 2000 miles from the Defendants in San Jose, and thus is hardly exposed – if vulnerable at all – to any physical act the "cult" or its adherents might undertake. He has also not provided evidence that the "cult" or its adherents have any ability to influence anyone or anything in the community where he resides.

"John Doe" had and has every right to try to vindicate his views in proceedings before the Superior Court and before this Court. However, unlike the plaintiffs in *Advanced Textile,* he has furnished no information to establish that he faces a credible threat of grave danger of any sort by litigating in his own name.

Fourth, the Court in *Advanced Textile* determined that the defendant companies in that action would not be prejudiced at the pleadings stage if plaintiff workers were permitted to move

forward anonymously for the time being. 214 F.3d at 1072. By contrast here, not merely the Defendants but this Court will be burdened unnecessarily if the motion at hand is granted. That would create the incongruous situation where relevant information is publicly available in the state court but not in this one. This Court has no power to reverse what "John Doe" did and caused to be done in the Santa Clara court by way of making names and many other facts public. Instead, if "John Doe's" requests are granted, everyone involved here would be forced to pretend that such information is not already public. That will not instill confidence that the "paramount importance of open courts" has been honored in this forum.

Lastly with respect to the *Advanced Textile* factors, withholding plaintiff names in that case was held to not impair the public interest. Indeed, the Court observed that "permitting plaintiffs to use pseudonyms will serve the public's interest in this lawsuit by enabling it to go forward." 214 F.3d at 1073. No such considerations are at play here. Unlike a massive FLSA suit with multiple large corporate defendants carrying "widespread implications of interest to the public at large," "John Doe's" anti-cult crusade is aimed at a single practitioner of Ayurveda. He has offered no indication that it has further implications or that his suit has generated broad interest in this or any other community. Additionally, unlike the situation in *Advanced Textile*, where disclosure of names might have caused the case to collapse on the plaintiff side, there is nothing to prevent "John Doe" from continuing to prosecute any viable claim he may have against any Defendant here under his own name.

Some matters where anonymity is sought have presented difficult challenges in balancing the factors set forth in *Advanced Textile*. *Doe v. Kamehameha Schs.*, *supra*, 596 F.3d 1036, is a good example. In the present action, however, the task is easy. "John Doe" has not provided even a minimal quantum of relevant evidence to show that any of the subject factors weighs in his favor.

### C. "John Doe" Has Not Satisfied the Requirements for Proceeding Under a Fictitious Name to Protect His Privacy Interest

"John Doe's" argument that he should be allowed to proceed anonymously to protect privacy is not tenable. He cannot even surmount the initial hurdle of demonstrating a privacy

1  interest that is legally cognizable in this context.

2      First, this is not a case where any of "John Doe's" personal characteristics raise questions
3  of "utmost intimacy" involving possible social stigma sufficient to overcome the presumption of
4  openness in litigation. *See*, e.g., *Doe v. Frank* (11th Cir.1992) 951 F.2d 320, 323-324 (citing
5  cases where permission to proceed anonymously was granted with respect to mental illness,
6  homosexuality, and transsexuality, but denying plaintiff's request for anonymity based on
7  alcoholism). Whatever an appropriate list of such characteristic might be today, more than 30
8  years later, "John Doe" has not identified anything about himself that might qualify in this
9  category. As a well-educated scientific professional, he has no reason to be so highly sensitive
10 to who he is or to what he does.

11     Nor are issues presented in this case so fraught that anonymity is necessary to avoid attack
12 over any intimate private belief. *See, e.g., Southern Methodist Univ. Ass'n of Women Law*
13 *Students v. Wynne & Jaffe* (5th Cir. 1979), 559 F.3d 707 (referencing cases involving birth
14 control, abortion, homosexuality, and welfare rights of illegitimate children or abandoned
15 families as raising legitimate privacy concerns, but refusing a request for anonymity by young
16 lawyers alleging employment discrimination based on fear of negative economic and social
17 consequences within legal circles). "John Doe" has not articulated any sensitive private belief
18 he holds that would justify anonymity.

19     Further in this regard, potential personal embarrassment alone will never suffice to justify
20 allowing a party to litigate anonymously. *See, e.g., Doe v. Frank*, *supra*, 951 F.2d at 324; *Doe*
21 *v. Bell Atlantic Business Services*, *supra*, 162 F.R.D. at 420 ("[e]conomic harm or mere
22 embarrassment are not sufficient to override the strong public interest in disclosure"). Far more
23 is always necessary, and "John Doe" simply does not have it to offer.

24     Second, "John Doe" has made it impossible to conclude that his identity and his
25 predicament are private. Once he voluntarily identified himself and described his family
26 circumstances in detail in state court proceedings with respect to matters encompassed by his
27 Complaint before this Court, he no longer had a personal privacy interest to protect.

28     Third, "John Doe" has no standing to assert privacy interests of others, specifically those

of his wife "Jane Doe 1" and daughters. "Jane Doe 1" has not only been personally identified by him, but has also identified herself in the initial Santa Clara action. And even more to the point, in her declaration opposing the pending motion she has stated that she has no objection to being referred to by name in this case and that she perceives no need for protection that "John Doe" asserts would flow from anonymity. JD1 Decl. ¶¶2, 6.

"John Doe" also cannot hide behind his daughters. He has not sued on behalf of either child. Even if he had, in the Ninth Circuit he still needs to satisfy the test in *Advanced Textile*, which he has not done. *See Doe v. Kamehameha Schs.*, *supra*, 596 F.3d at 1046.

Yet assuming that pertinent rules of this Circuit do not apply, decisions elsewhere in cases brought by or on behalf of minor children upholding anonymity are easily distinguished. *Doe v. Porter* (6th Cir. 2004) 370 F.3d 558, for example, involved a challenge to religious instruction in public schools in rural Tennessee that drew actual criticism in the local press. Granting anonymity, the court described the plaintiffs' complaint as making "revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Id*. at 560. No such thing has happened here.

Similarly, "John Doe" cannot properly rely on a throw-away line from *Doe v. Stegall* (5th Cir. 1981) 653 F.2d 180, to hide his name. *See* ECF 8 at 5:27-28. The complaint in *Stegall* was brought on behalf of a mother and her children. The subject matter again was highly controversial in the forum involved: religious instruction in public schools, this time in rural Mississippi. The court concluded that anonymity for all plaintiffs was warranted based on actual threats of violence described in detail in footnote 6 of the opinion and by other factors. *Id*. at 186. **One** of those other considerations was that several plaintiffs were minors. *Id*. No such facts exist here. No children are litigants in this matter, there is no matter of general public disagreement involved, and supposed threats posited by "John Doe" as emanating from Ms. Priyanka and her purported "cult" – even assuming solely for sake of discussion that the assertion has any credibility – pale in comparison to those threats actually made in *Stegall* and in *Porter*.

Again, neither daughter is a party in our case. And even if one or both were, "John Doe" cannot legitimately assert a right to privacy for himself merely because he is their father. Nor

can he legitimately assert a right to privacy on their behalf after destroying whatever privacy they otherwise may have had by identifying them repeatedly by name in his state court filings. Further still, as demonstrated by their pending restraining order requests, the daughters want protection *from* "John Doe" – not *by* him.

"John Doe's" position that anonymity is necessary to protect privacy has no merit.

## V.   CONCLUSION

Whether "too late, too little" or "too little, too late," "John Doe" is not entitled to litigate this case under a fictitious name. His motion should be denied.

Date: September 18, 2025

STRUCTURE LAW GROUP, LLP

By: _____
Jon Michaelson, Esq.
Attorneys for Defendants Vaidya Priyanka, Aum Ayurveda, and Aum Sacred Art, LLC

- 13 -
DEFENDANTS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND FOR LEAVE TO PROCEED ANONYMOUSLY