UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>VAIDYAJI PRIYANKA, et al.,<br><br>    Defendants. | Case No. 25-cv-06465-PCP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 8, 24, 33 |

Plaintiff John Doe brings this lawsuit against Vaidyaji Priyanka ("VP"), AUM Ayurveda ("AUM"), and Does 1–50 arising from defendants' relationships with Doe and his minor children. Defendants now move to dismiss all of Doe's claims. For the following reasons, the Court grants defendants' motion in part and denies it in part.[1]

## BACKGROUND

VP owns and operates AUM, a company specializing in Ayurvedic medicine and holistic therapy.[2] Dkt. 1 ¶ 41. In 2022, Doe's wife ("Wife") was introduced to VP. *Id.* ¶ 70. Wife's

---

[1] Doe also moves to proceed anonymously. Dkt. 8. "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). This is a balancing test subject to the district court's discretion. *Id.*; *see also Heineke v. Santa Clara Univ.*, No. 17-CV-05285-LHK, 2017 WL 6026248, at *5 (N.D. Cal. Dec. 5, 2017). In this case, Doe has already filed two parallel state court proceedings—one in Texas and one in California—that include the real names of himself and his family. For that reason, Doe has not established that sealing the case would offer any necessary protection for his privacy interests. Because Doe's family has not consented to the suit, however, their identity may be protected by the use of their initials. Defendants' motion for permission to file materials under seal, Dkt. 33, is therefore denied. Defendants must publicly refile the motion and exhibits redacting only the names of Doe's family members, and Doe must use his real name in all further filings.

[2] For the purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the allegations in Doe's complaint.

brother-in-law had been seen by VP for cancer treatment before passing away. *Id.* ¶ 71. Wife began seeing VP for help with her rheumatoid arthritis before eventually introducing her to her two minor daughters. *Id*. ¶ 79. VP began training the older daughter ("Older Daughter") via online voice lessons. *Id*. ¶ 80. Older Daughter "improve[d] significantly." *Id*. The success of the voice lessons, combined with the treatment of Wife's health issues, created a sense of trust between the family and VP. Shortly after, VP allegedly "began fabricating harmful lies and false diagnoses" in a complex scheme to gain control over the daughters and siphon nearly $650,000 from Doe for treatments and spiritual services. *Id*. ¶ 44.

      In spring 2023, VP convinced Wife to bring Older Daughter from Texas to San José for short-term "treatment" of her sexual orientation and gender identity. *Id*. ¶ 85. Doe agreed "[i]n the spirit of keeping peace at home," though with the understanding that the treatment would not involve a form of conversion therapy but rather individualized therapy to help his daughter "come to terms" with her various identities. *Id*. Wife and their daughters returned to Texas, but in the summer both girls were enrolled in a summer camp run by VP. *Id*. ¶ 89. At around the same time, in either July or August of 2023, VP called Wife, claiming she had received a warning from "the Spookies" about Older Daughter. *Id*. ¶ 94.

      AUM allegedly uses "spiritual masters" (the "Spookies") to "scare and threaten people into submission." *Id.* ¶¶ 51, 59. AUM members pay for consultations with the Spookies who then share visions and advice. *Id.* ¶ 51. Members only communicate with the Spookies—who live in India— via Richard Walters, a translator who relays their messages via text, phone call, and voice notes. *Id.* ¶¶ 53, 57. The Spookies become "upset" if a member "overshares" information. *Id.* ¶ 59.

      VP told Wife that the Spookies saw that Oldest Daughter "had murderous thoughts" towards her sister, and that she was planning to take her younger sister "to Mexico in an unmarked white van to be sold as a sex slave." *Id.* ¶¶ 94–95. VP then claimed that the Spookies identified Older Sister's teenage friend as the "ring-leader of an international child trafficking group." *Id.* ¶ 95. This conversation convinced Wife to move Older Daughter from Texas to California and into VP's care. *Id.* ¶ 96. Doe agreed. *Id.* Since then, he has not had any contact with Older Daughter. *Id.* ¶ 98. Doe's youngest child ("Younger Daughter") was "taken to California without

2

"[his] consent" in June 2025. *Id.* ¶ 132. Doe hasn't spoken to Younger Daughter since she left. *Id.*[3]

Doe also alleges that around May 2025 the Spookies accused his father of molesting thirty-eight children. *Id.* ¶ 122. When Doe demanded proof, VP "threatened to inform his employer that he was harboring a pedophile by allowing his father to live with him," and Walters told Doe that the "sale value of [his] home would decrease for harboring a pedophile in it." *Id.* ¶ 124.

Doe filed suit against defendants on July 31, 2025, asserting the following causes of action against all of the defendants: (1) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO); (2) fraud and undue influence; (3) constructive fraud; (4) conversion; (5) theft by false pretenses; (6) unfair competition in violation of California Business and Professions Code § 17200 ("UCL"); (7) false advertising in violation of California Business and Professions Code § 17500 ("FAL"); (8) discrimination in violation of California's Tom Bane Civil Rights Act; (9) discrimination in violation of California's Ralph Civil Rights Act; (10) misrepresentation of material facts in violation of the Federal Trade Commission Act. *Id.* ¶¶ 147–82; 183–95; 196–203; 216–21; 222–29; 230–45; 246–66; 267–76. Finally, he asserted a claim for negligent supervision against only VP and AUM. *Id.* ¶¶ 204–15.

VP and AUM now move to dismiss Doe's complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). For the following reasons, the Court grants the motion as to the fraud, FTC Act, negligent supervision, undue influence, FAL, and California civil rights claims. The Court denies the motion as to the RICO, conversion, theft by false pretenses, and UCL claims.

## LEGAL STANDARDS

The Federal Rules require a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint does not do so, the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3] Doe filed for divorce and is involved in family court custody proceedings in both Texas and California. *Id.* ¶ 137.

3

(2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

In any action alleging fraud, additional requirements apply. Under Federal Rule of Civil Procedure 9(b), the plaintiff must state the circumstances constituting the alleged fraud with particularity, including the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)). Scienter "may be alleged generally." Fed. R. Civ. P. 9(b).

**ANALYSIS**

**I.     Doe alleges a claim under RICO.**

To survive a 12(b)(6) challenge to a RICO claim, a plaintiff must sufficiently allege injuries caused by the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The allegedly illegal enterprise "need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002). A defendant need not have personally committed an overt act in furtherance of the RICO conspiracy but need only be "aware of the essential nature and scope of the enterprise and [have] intended to participate in it." *Comm. to Protect our Agric.*

4

*Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1172 (E.D. Cal. 2017) (citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)). Finally, courts in this district tend to require that RICO claims asserted against multiple defendants include allegations that each defendant committed at least two predicate acts. *See, e.g.*, *Villarroel v. Recology Inc.*, 775 F. Supp. 3d 1050, 1070 (N.D. Cal. 2025).

Defendants argue that Doe failed to properly plead (1) the required predicate acts with requisite specificity, (2) a pattern of activity, or (3) proximate causation. These arguments fail.

### A.   9(b) Standards

Because Doe's RICO cause of action is grounded in fraud, the claim must meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). The purpose of the heightened standard is to provide defendants with notice of the specific conduct they must defend. *Vess*, 317 F.3d at 1106. Defendants contend that Doe's complaint fails this standard because he does not specifically distinguish VP's conduct from AUM's conduct. But Doe alleges that there is "a unity of interest and ownership between VP and AUM such that any individuality and separateness" between them "has ceased." Dkt. 1 ¶ 30. Because Doe alleges that the defendants can be treated as one and the same, his complaint provides them with notice of the facts sufficient for them to adequately prepare a defense.

### B.   Predicate Acts and Pattern of Activity

The alleged predicate acts for Doe's RICO claim include both wire/mail fraud and violations of the Travel Act. Dkt. 1 ¶ 148.  He sufficiently pleads the first predicate act as a pattern of activity but not the second predicate act.

Wire fraud requires showing (1) a scheme to defraud, (2) use of either mail or wire to further the scheme, and (3) specific intent to defraud. *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017). A violation of the Travel Act requires a showing that a person (1) traveled in interstate or used the telephone (2) with the intent to facilitate an unlawful activity and then (3) performed or attempted to perform the acts previously described. 18 U.S.C. § 1952. There is significant overlap between the two predicate acts, particularly when they are grounded in the

unlawful activity, as is the case here. Although they each require a slightly different showing of intent, at the motion to dismiss stage, intent and knowledge can be pled generally. *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007).

Doe alleges multiple predicate acts of wire fraud with the required particularity. He alleges that VP called Wife to warn her that Older Daughter was violent and planned to sell her sister as a "sex slave" in Mexico. Dkt. 1 ¶ 94–95. He alleges that "VP and her associates" scripted statements and arguments for Wife to convince her husband to allow his daughter to remain in California under VP's control and to continue paying her school and lodging fees. *Id.* ¶¶ 97, 107–09. He alleges that these communications occurred in late July or early August 2023. *Id.* ¶ 94. Although he does not specifically allege that VP was in California and that he and Wife were in Texas, that can be inferred from the rest of the complaint. *See id.* ¶¶ 17 (establishing that Doe and Wife live in Texas), 27 (alleging that VP resides in California).[4]

Doe also alleges that "[i]n or around May 2025," VP began accusing Doe's father of child molestation, then threatened to inform his employer that he was harboring a pedophile by allowing his father to live with him. *Id.* ¶¶ 122, 124. Although Doe does not specifically plead that VP called him from California, he does allege that the "false accusations caused [him] to pay nearly $1,700 to VP for the Spookies to conduct prayers to rectify the issue." *Id.* ¶ 128.

Doe sufficiently alleges a scheme and specific intent to defraud in connection with these predicate acts. A scheme is sufficient to establish wire fraud if it "deprive[s] others of tangible property interests." *United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir. 1980). Doe alleges a scheme to deprive him of hundreds of thousands of dollars—a deprivation of a tangible interest. *See id.* Specific intent is satisfied if a scheme is "reasonably calculated to deceive persons of ordinary prudence and comprehension" and can be "shown by examining the scheme itself." *Id.* at 1172. A scheme to defraud a parent by engendering concern over their children's health and wellbeing meets this standard.

---

[4] A complaint sufficiently alleging a pattern of activity under RICO need only include "two predicate acts." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1529 (9th Cir. 1995). As shown above, Doe alleges two predicate acts of wire fraud.

6

1     These predicate acts are also sufficient to plead a pattern of activity. Not only does Doe
2  allege more than two predicate acts, but the acts are also related and continuous. *See Sedima*, 473
3  U.S. at 496 n.14; *Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020). "Predicate acts are
4  related if they have 'the same or similar purposes, results, participants, victims, or methods of
5  commission, or otherwise are interrelated by distinguishing characteristics and are not isolated
6  events.'" *Metaxas*, 503 F. Supp. 3d at 941 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,
7  240 (1989)). Here, Doe alleges multiple acts in which VP directly or through Wife used diagnoses
8  of his daughters and messages from the Spookies to get him to send Defendants money. The acts
9  are continuous because they amount to "a series of related predicates extending over a substantial
10 period of" multiple years. *H.J. Inc.*, 492 U.S. at 241. Doe need not allege multiple schemes to
11 establish a continuous pattern. *Id.* at 240.

12    Conversely, Doe does not sufficiently allege violations of the Travel Act. He never pleads
13 specific facts showing that defendants actually traveled to Texas. Dkt. 30, at 15; Dkt. 1 ¶ 148. And
14 although he does allege that in June 2025 defendants "caused" Younger Daughter to travel from
15 Texas to California without his consent, Dkt. 1 ¶ 132, he does not allege what method they used to
16 do so or what unlawful activity they were promoting through their use of that method.

### C. Proximate Cause

To allege a RICO claim, a plaintiff must allege an injury that was proximately caused by the predicate acts. *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1034 (N.D. Cal. 2004). Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged," *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992), but it need not be the "sole cause" of the injury. *Oki Semiconductor Co.*, 298 F.3d at 773.

Doe's stated injury is the loss of over $650,000. Dkt. 1 ¶ 139. He sufficiently alleges that Defendants' actions defrauded him of that sum. Defendants argue that because some of that sum included payments for things like private schooling, food, housing, and "successful singing lessons and fruitful efforts to improve one daughter's reading skills," he could not plausibly have been victimized. Dkt. 24, at 11–12. But Doe alleges that he would not have spent the money had defendants not convinced him and Wife to move their children to California, enroll them in private

1     school and other classes, and pay them for various medical treatment. This is sufficient to plead
2     proximate causation.
3          Because defendants' arguments for dismissal each fail, defendants' motion to dismiss
4     Doe's RICO claim is denied.

5     **II.    Doe's claims for fraud and constructive fraud fail to plead justifiable reliance.**

6          The "indispensable elements of a fraud claim [under California law] include a false
representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess*,
317 F.3d at 1105. Constructive fraud likewise requires a showing of justifiable reliance. *Est. of Gump*, 2 Cal. Rptr. 2d 269, 281 (Cal. Ct. App. 1991). To establish reliance, "plaintiffs must show (1) that they actually relied on the defendant's misrepresentations, and (2) that they were reasonable in doing so." *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 68 Cal. Rptr. 3d 828, 855 (Cal. Ct. App. 2007), *as modified* (Dec. 26, 2007). "Actual reliance occurs when a misrepresentation is an immediate cause of [a plaintiff's] conduct … and when, absent such representation, he would not … have entered into the … transaction." *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 919 (Cal. 1997) (cleaned up). Justifiable reliance is generally a "question of fact" unless "reasonable minds can come to only one conclusion based on the facts." *All. Mortg. Co. v. Rothwell*, 900 P.2d 601, 608–09 (Cal. 1995).

There are several instances where Doe alleges that, if not for Wife, he would not have succumbed to defendants' fraud.[5] For example, Doe alleges that he would not have paid for his daughter's conversion therapy by VP if not for Wife's "trust" that VP was a legitimate healer and spiritual leader. Dkt. 1 ¶ 85. In other moments, he either expresses outright skepticism, *see id.* ¶ 126 (stating that he paid for Younger Daughter's treatment "despite his growing doubts"), or accuses Wife of "manipulat[ing]" him into believing VP's "lies," *id.* ¶ 97. In each case, Doe cannot allege justifiable reliance on *defendants'* representations because he either disclaimed any

---

[5] Except in certain limited circumstances, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Accordingly, defendants' attempts to introduce evidence via their motion to dismiss is improper. *See* Dkt. 24, at 13 n.4.

1  reliance or blames Wife, not defendants, for his actions.

2      There are only two instances where Doe alleges that he believed defendants and did as he
3  was told: He avoided using insurance to pay for Older Daughter's medical care because VP
4  claimed it would affect her chances of being admitted to college and instead paid defendants
5  directly in cash, *id.* ¶ 103; and he paid $1,700 to VP for the Spookies to "rectify" the molestation
6  by his father, *id.* ¶ 128. Neither of these are sufficient to support a fraud claim. First, an
7  amorphous accusation of an "increased cost" of medical care does not meet the pleading
8  requirements under 9(b). Second, the accusations of molestation—while disturbing—are not
9  linked to the gravamen of Doe's fraud claims: that VP and AUM interfered with his relationship
10 with his daughters and siphoned money for their mental and medical care. Doe's constructive
11 fraud claim therefore fails.

### III. Doe alleges a narrow theory of theft by false pretenses.

    California Penal Code § 496 allows any person who has been injured by theft by false pretenses to bring an action for three times the amount of actual damages plus the cost of suit and reasonable attorneys' fees. "[T]he elements required to show a violation of section 496[] are simply that (i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." *Dai v. Liu*, No. 24-CV-00356-VKD, 2024 WL 1772865, at *3 (N.D. Cal. Apr. 23, 2024) (citing *Switzer v. Wood*, 247 Cal. Rptr. 3d 114, 121 (Cal. Ct. App. 2019), *as modified* (May 10, 2019)). Theft includes theft by false pretenses. Cal. Penal Code § 484(a) ("Every person … who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money … is guilty of theft.").

    Defendants argue that money spent on "education, housing, food, holistic treatment, and spiritual advice" cannot be stolen because Doe likely would have spent that money anyway. Dkt. 24, at 16. They cite no caselaw supporting that position, which fails to recognize that, for purposes of theft by false pretenses, it doesn't matter *what* the money is spent on but *whether* that money was taken via a false pretense.

    Like the fraud claims above, however, Doe must show some kind of reliance on the false

United States District Court
Northern District of California

representations. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1088 (N.D. Cal. 2023) ("To plausibly state a theft by false pretenses claim, plaintiffs must allege not only that [defendant] made specific false representations to them, but also that plaintiffs transferred their property [] 'in reliance on the representation.'") (quoting *People v. Miller*, 97 Cal. Rptr. 2d 684, 685 (Cal. Ct. App. 2000), *as modified on denial of reh'g* (July 6, 2000)). As noted above, there are only two places in the complaint where Doe sufficiently alleges reliance on defendants' statements, and only one of which is specific enough to meet 9(b) pleading standards: his payment of $1,700 to the Spookies to "rectify" the accusations of child abuse by Doe's father. *But cf. Citizens of Human., LLC v. Costco Wholesale Corp.*, 89 Cal. Rptr. 3d 455, 470 (2009), *disapproved of on other grounds by Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 894 (Cal. 2011) (allowing "actual damages" under the statute to include the unspecified cost of damages to reputation). Because the gravamen of the claim here is not rooted in defendants' interference with Doe's children but rather theft of money from Doe, his claim may proceed narrowly as it relates solely to the $1,700 paid to VP and AUM.

### IV. Doe fails to allege a claim of undue influence.

Doe alleges a claim of undue influence pursuant to California Civil Code § 1575 and other state law provisions. The claim is fashioned as a tort claim. *See, e.g.*, Dkt. 1 ¶ 188 ("As a direct and proximate result of Defendants' fraudulent activity, Plaintiff has suffered damages as alleged herein."). Section 1575, however, simply defines one circumstance under which a contract may be rescinded. *See Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 130–31, 135 (Cal. Ct. App. 1966) (discussing undue influence as a "cause of action for rescission of a transaction to which [a party's] apparent consent had been obtained through the use of undue influence"). Doe's counsel conceded at the hearing on defendants' motion that undue influence is not a tort cause of action remediable by damages. Doe's undue influence claim is therefore dismissed without leave to amend.

### V. Doe fails to allege a claim for negligent supervision.

To prevail on a negligent supervision claim, a party must show the traditional elements of negligence: (1) a legal duty to use due care; (2) a breach of that duty; (3) a reasonably close causal

10

1    connection between that breach and plaintiff's resulting injury; and (4) a loss or damage to
2    plaintiff. *See Thompson v. Sacramento City Unified Sch. Dist.*, 132 Cal. Rptr. 2d 748, 763 (Cal.
3    Ct. App. 2003); *Phillips v. TLC Plumbing, Inc.*, 91 Cal. Rptr. 3d 864, 868 (Cal. Ct. App. 2009). In
4    addition, he must "allege facts to show that the defendant was on notice that the [supervisee] was
5    likely to cause harm before the harm occurs." *Poole v. Healthright 360*, No. 25-CV-03173-JCS,
6    2025 WL 1883827, at *11 (N.D. Cal. July 7, 2025) (citing *Phillips*, 91 Cal. Rptr. 3d at 868–69).

The only defendants Doe names in his negligent supervision claim are AUM and VP—he does not include any of the unnamed defendants (Does 1–50), or anyone else who could be either an employee or agent of AUM. A key part of any negligent supervision claim is the relationship between the tortfeasor and the supervising defendant. But because Doe alleges that "AUM is nothing more than a shell entity acting as the alter ego of VP," there cannot be a supervisor-supervisee relationship between the two. As a result, Doe's claim for negligent supervision fails.

### VI.   Doe sufficiently alleges a conversion claim.

"The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Welco Elecs., Inc. v. Mora*, 166 Cal. Rptr. 3d 877, 881 (Cal. Ct. App. 2014) (citation omitted). Defendants challenge the third element. They argue that because Doe did not identify what amount of the alleged $650,000 went to the defendants versus third parties like airlines or schools, it is not clear what portion was converted. Dkt. 35, at 13. But "a conversion claim does not require that a specific lump sum of money be entrusted to defendant; the plaintiff must merely prove a specific, identifiable sum of money that was taken from it." *Welco Elecs.*, 166 Cal. Rptr. 3d at 882. Therefore, Doe sufficiently alleges his conversion claim. The amount of Doe's damages presents a factual issue that must be addressed in subsequent proceedings.

### VII.  Doe sufficiently alleges a claim under the UCL but not the FAL.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong of the UCL "'borrows' violations of other laws and treats them as unlawful practices

11

independently actionable" under the UCL. *Saunders v. Superior Ct.*, 33 Cal. Rptr. 2d 438, 441 (Cal. Ct. App. 1994). The UCL thus prohibits "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Id.* Because Doe states claims for a RICO violation, theft by false pretenses, and conversion, he adequately states a claim under the unlawful prong of the UCL.

The FAL, on the other hand, "broadly prohibits false or misleading advertising, declaring that it is unlawful for any person or business to make or distribute any statement to induce the public to enter into a transaction 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" *People v. Johnson & Johnson*, 292 Cal. Rptr. 3d 424, 442 (Cal. Ct. App. 2022). Because the FAL is intended to protect consumers from false or misleading advertising, "it is necessary only to show that 'members of the public are likely to be deceived.'" *Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 462 P.3d 461, 476 (Cal. 2020).[6] This reasonable consumer standard "requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" Where, as here, a claim under California's consumer protection statutes is premised on a fraudulent course of conduct, Rule 9(b)'s heightened pleading standard applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Doe alleges his FAL claim on two grounds: defendants' representations "that his daughters were in severe danger as a result of their mental health" and defendants' "advertisements that their products, services and treatments … had healing or therapeutic or magical or divine qualities and properties." Dkt. 1 ¶¶ 240–43. Neither is sufficient to state an FAL claim.

The first category of misrepresentations alleged by Doe do not fit neatly into the framework of the FAL. The FAL presupposes some representation targeted at the public. Cal. Bus. & Prof. Code § 17500 (prohibiting untrue or misleading practices that "induce the public" or are disseminated "before the public"); *see Nationwide*, 462 P.3d at 476 (requiring FAL claims to show members of the public are likely to be deceived). Although oral statements and misrepresentations

---

[6] The same standard applies to the fraudulent prong of the UCL when based on untrue or misleading advertising. *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009).

1  to individuals are actionable under the FAL, cases premised on such misrepresentations generally
2  involve a discernable course of conduct directed to the public rather than only one individual. *See,*
3  *e.g.*, *People v. Ashford Univ., LLC*, 319 Cal. Rptr. 3d 132, 159–60 (Cal. Ct. App. 2024) (affirming
4  that each misleading call from a university admissions counselor was a separate violation of the
5  FAL); *People v. Dollar Rent-A-Car Systems, Inc.*, 259 Cal. Rptr. 191, 197 (Cal. Ct. App. 1989)
6  (finding that misleading statements to customers were part of an established business practice).
7  Here, Doe has not sufficiently alleged that the misrepresentations or advertisements directed at
8  him and concerning his daughters were part of a larger practice directed at the public.

9  The second category of advertisements Doe challenges are not pleaded with sufficient
10 particularity. Doe alleges that defendants sell "spiritual readings, poojas, yagyas/yagnas, evil spirit
11 warding instruments (yantras), jewelry, clothes, trips, foods and healthy snacks, herbs,
12 treatments," and more to defendants' members and that VP falsely claimed to have multiple
13 prestigious degrees. Dkt. 1 ¶¶ 11, 47. Doe does not allege, however, how these services and
14 credentials are advertised, who the "members" are to whom defendants advertise, or the specific
15 content of these advertisements. *See Kearns*, 567 F.3d at 1125–26 (affirming dismissal of an FAL
16 claim where the plaintiff failed to specify the content of advertising materials or where he was
17 exposed to advertising). Doe therefore fails to state a FAL claim premised on these
18 representations.

19 **VIII.   Doe fails to allege any violation of his civil rights under California law.**
20    **A.    Bane Act**
21 A plaintiff bringing a cause of action under the Bane Act must show (1) intentional
22 interference or attempted interference with a federal or state constitutional or legal right and (2)
23 that the interference or attempted interference was by threats, intimidation, or coercion. *Animal*
24 *Prot. & Rescue League, Inc. v. Cnty. of Riverside*, 333 Cal. Rptr. 3d 209, 214 (2025), *reh'g denied*
25 (May 27, 2025); Cal. Civ. Code § 52.1.
26 Doe does not identify a cognizable interference with a constitutional or legal right by
27 defendants. Doe's complaint alleges defendants interfered with his "parental rights" and "his
28 rights under this State's Constitution" to retain physical custody of his daughters. Dkt. 1 ¶¶ 247,

13

250. His opposition also argues his parental rights are "a fundamental liberty interest protected by the federal Constitution." Dkt. 30, at 26 (quoting *In re Abram L.*, 161 Cal. Rptr. 3d 837, 843 (Cal. Ct. App. 2013), *as modified* (Sept. 5, 2013)). But Doe points to no case in which a private party was liable for interference with parental rights under state or federal law, and the Court is aware of none. *See In re Abram L.*, 161 Cal. Rptr. 3d at 843 (considering due process requirements for *court-ordered* removals of a child from a parent's custody). Rather, the fundamental interest "of parents in the care, custody, and control of their children" protects against interference with that right *by the government*, whether through court order, statute, or other actions by state actors. *See Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (collecting cases, all of which involve state action); *In re Marriage of Harris*, 96 P.3d 141, 151–54 (Cal. 2004) (rejecting constitutional challenge to infringement of parental rights under federal law and to right to privacy under state law); *Guardianship of Ann S.*, 202 P.3d 1089, 1101–05 (Cal. 2009) (applying federal law to constitutional challenge to state interference with parental rights).

Even if Doe did plausibly allege a constitutional right with which defendants had interfered, he does not show how defendants interfered through threats, intimidation, or coercion. For example, while Doe sufficiently alleges a threat by defendants to inform Doe's employer that his father is a child abuser, Doe never directly connects that threat to an attempt to interfere with his parental rights. And while Doe may otherwise be able to show interference with his parental rights, he fails to show it was done through coercion. *See Herrera v. AllianceOne Receivable Mgmt., Inc.*, 170 F. Supp. 3d 1282, 1288 (S.D. Cal. 2016) (requiring Bane Act claims rooted in a theory of coercion to include allegations of such moral force "as to constrain [the plaintiff] to do against his will something he would not otherwise have done"); *see also Muhammad v. Garrett*, 66 F. Supp. 3d 1287, 1296 (E.D. Cal. 2014), *aff'd sub nom. Muhammad v. City of Bakersfield*, 671 F. App'x 982 (9th Cir. 2016) (citation omitted) (explaining that to evaluate threatening or coercive conduct, a court considers whether a reasonable person "would have been intimidated by the actions of the *defendants*.") (emphasis added). As explained above, Doe cannot plausibly allege that he was coerced by the defendants when he expressed hesitation, doubt, and influence by Wife.

14

**B.     Ralph Act**

A plaintiff pleading a Ralph Act violation must show that (1) defendants committed or threatened violence against the plaintiff; (2) defendants were motivated by their perception of the plaintiff's protected class; (3) the plaintiff was harmed; and (4) defendants' conduct was a substantial factor in causing that harm. *Campbell v. Feld Ent., Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014). Courts in this district require violence to involve "some physical, destructive act." *Id*. (relying on the plain meaning of the word "violence"); *Gottschalk v. City & Cnty. of San Francisco*, 964 F. Supp. 2d 1147, 1164 (N.D. Cal. 2013) (holding that "economic coercion" and "character assassination" do not constitute violence within the meaning of the Ralph Act); *see also Animal Prot. & Rescue League, Inc.,* 333 Cal. Rptr. at 919 (holding that the threat of an arrest alone is not enough to constitute violence). Doe has not identified any conduct involving the kind of physical violence required to bring a Ralph Act claim.

Even if the Court were to find that violence need not be physical, it cannot find that Doe plausibly alleged that the violence was motivated by his religion. Doe does not point to any statement by defendants that they were motivated by animus towards him, let alone animus based in religion. *See Robinson v. Cnty. of Shasta*, 384 F. Supp. 3d 1137, 1163 (E.D. Cal. 2019) (finding that plaintiff sufficiently pled that his mental disability was a motivating reason for defendant's conduct because a responding officer called him a "nut"); *Est. of Nunis by & through Nunis v. City of Chula Vista*, 676 F. Supp. 3d 867, 886 (S.D. Cal. 2023) (finding that because the record was "devoid" of any race-related comments, a reasonable juror could not conclude that race was a motivating factor in defendants' conduct). Doe's Ralph Act claim is therefore dismissed.

**IX.    There is no private cause of action under the FTC Act.**

Section 5(a) of the FTC Act does not allow for a private right of action. *Dreisbach v. Murphy*, 658 F.2d 720 (9th Cir. 1981) ("Section 5 of the FTC Act "rests initial remedial power solely in the Federal Trade Commission.") (citing *Carlson v. Coca-Cola Co.*, 483 F.2d 279 (9th Cir. 1973)); *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1201 n.20 (C.D. Cal. 2008); *Kochava, Inc. v. Fed. Trade Comm'n*, No. 22-CV-00349-BLW, 2023 WL 3250496, at *4 (D. Idaho May 3, 2023); *Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*,

15

1  No. 18-CV-7661-GW(GJSX), 2018 WL 6985317, at *7 (C.D. Cal. Dec. 3, 2018). Doe's FTC Act claim is therefore dismissed without leave to amend.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Doe's claims of fraud, negligent supervision, and violations of California's civil rights statutes and FAL are dismissed with leave to amend. Doe's claims under the FTC Act and for undue influence are dismissed with prejudice and without leave to amend. Defendants' motion to dismiss his claims for conversion, theft by false pretenses, and violations of RICO and California's UCL is denied. Any amended complaint must be filed by February 9, 2026. If no amended complaint is filed, Doe's claims of fraud, negligent supervision, and violations of California civil rights statute and FAL will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: January 5, 2026

_____
P. Casey Pitts
United States District Judge