UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VARADARAJAN DWARAKANATH,

Plaintiff,

v.

VAIDYAJI PRIYANKA, et al.,

Defendants.

Case No.  5:25-cv-06465-PCP

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 64

Plaintiff Varadarajan Dwarakanath brings this lawsuit against Vaidyaji Priyanka ("VP"), AUM Ayurveda ("AUM"), and Does 1–50 arising from defendants' relationships with Dwarakanath, his wife, and his then-minor children. Dwarakanath's original complaint was dismissed in part, and he then filed a first amended complaint. Defendants now move to dismiss some of the claims against them and to strike portions of the amended complaint. For the following reasons, the Court denies the motion.

**BACKGROUND**

Dwarakanath's amended complaint is substantially similar to his original one, though he now adds new allegations involving his pending divorce proceedings and VP's response to the filing of this action.[1]

Dwarakanath initiated divorce proceedings in June 2025, largely in response to the growing differences between how he and his wife S.S. perceived VP and her alleged cult.[2] Once

---

[1] The Court's previous order provides extensive background on both the facts and history of the case. *See Doe v. Vaidyaji Priyanka*, 814 F. Supp. 3d 1073, 1081–82 (N.D. Cal. 2026).

[2] For the purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged in plaintiffs' complaint.

Dwarakanath began to question the influence of the cult on him and his family, VP encouraged Dwarakanath's daughters—K.D. and M.D.—and S.S. to file frivolous domestic violence restraining order applications against him in both Texas and San José. Despite those applications, Dwarakanath was granted primary custody of both girls in August 2025. Since then, S.S. has violated multiple court orders by retaining improper custody of the girls and refusing to deliver them to him.

VP continued to encourage and assist Dwarakanath's family in filing reports, sending letters, and otherwise harassing him. On July 21, 2025, Dwarakanath informed VP that he planned to file the instant suit. Days later, on July 23, 29, and 30, 2025, S.S. filed reports with Child Protective Services (CPS) alleging that he abused their daughters. Shortly after, K.D. told a "therapy intern" that she had been abused by her father, who then filed another CPS report. Simultaneously with the reports above, S.S. also began filing police reports with the Los Altos and Houston Police Departments. None of the various agency reports were substantiated, and in some cases, the claims were not pursued.

In August 2025, an anonymous letter was mailed to Dwarakanath's supervisor repeating the same allegations of abuse described in the reports described above. Similar letters, this time signed by K.D., were also sent to Dwarakanath's friends. In addition, K.D. threatened to go to Dwarakanath's temple "and provide a recorded interview" detailing alleged abuse by him.

Dwarakanath filed the instant suit on July 31, 2025, asserting the following causes of action against all defendants: (1) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO); (2) fraud and undue influence; (3) constructive fraud; (4) conversion; (5) theft by false pretenses; (6) unfair competition in violation of California Business and Professions Code § 17200 ("UCL"); (7) false advertising in violation of California Business and Professions Code § 17500 ("FAL"); (8) discrimination in violation of California's Tom Bane Civil Rights Act; (9) discrimination in violation of California's Ralph Civil Rights Act; and (10) misrepresentation of material facts in violation of the Federal Trade Commission Act. He also asserted a claim for negligent supervision against only VP and AUM. Defendants filed a motion to dismiss, which the Court granted in part while allowing his RICO, conversion, theft by false pretenses, and UCL

claims to proceed. Dwarakanath now brings seven claims in his amended complaint, asserting the following causes of action: (1) RICO, (2) fraud, (3) constructive fraud, (4) negligent supervision, (5) conversion, (6) theft by false pretenses, and (7) violations of all three prongs of the UCL. Defendants move to dismiss claims (2), (3), (4), (6), and (7) under Rule 12(b)(6) and move to strike certain paragraphs of the complaint under 12(f).

## LEGAL STANDARDS

The Federal Rules require a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint does not do so, the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

A party may move to strike any "redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored," and should only be granted if the stricken matter could not possibly bear on the litigation. *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 755 (N.D. Cal. 2024). Motions to strike should be viewed in

light most favorable to the nonmoving party. *Id*. If there is any doubt as to the relevancy of the material, then the court should deny the motion. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

## ANALYSIS

### I.      Motion to Dismiss

Defendants' motion to dismiss is limited to Dwarakanath's claims of fraud, constructive fraud, negligent supervision, theft by false pretenses, and violations of the UCL. For the following reasons, the motion is denied.

#### A.      Fraud

In moving to dismiss Dwarakanath's fraud claim, defendants contend only that he fails to plead the required element of reliance. To establish reliance, a "plaintiff[] must show (1) that they actually relied on the defendant's misrepresentations, and (2) that they were reasonable in doing so." *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 863 (2007). "Actual reliance occurs when a misrepresentation is an immediate cause of [a plaintiff's] conduct … and when, absent such representation … he would not [] have entered into the [] transaction." *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 919 (Cal. 1997). Whether reliance was reasonable is generally a "question of fact" unless "reasonable minds can come to only one conclusion based on the facts." *All. Mortg. Co. v. Rothwell*, 900 P.2d 601, 608–09 (Cal. 1995).

Defendants argue that Dwarakanath's fraud claims fail to plead justifiable reliance both because inconsistencies between the original and amended complaints make Dwarakanath's claims of justifiable reliance implausible and because whatever reliance Dwarakanath did have was unreasonable. Neither argument succeeds.

Defendants first suggest that purported inconsistencies between the original and amended complaint demonstrate that Dwarakanath's claim of reliance is not plausible. For example, the original complaint stated that when VP claimed Dwarakanath's daughter was making sexual advances on her therapists, he was "incredulous." His amended complaint now alleges that he was "initially incredulous" before ultimately "believe[ing] VP," particularly because "her manipulation

4

United States District Court
Northern District of California

and fraud" caused him to not see his daughter for years and thus he had no way to independently verify VP's claims. Similarly, in his original complaint, Dwarakanath stated that he was "incredulous" with respect to VP's representations that his younger daughter was interested in drugs. In his new complaint, he now alleges that because he had not "seen his daughter in close to two years," he "believed" the representations.

Whether or not these statements are inconsistent or in tension, "[t]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007). In *PAE Gov't Services*, the Ninth Circuit reversed a district court for striking portions of a complaint that appeared, in the district court's view, to contradict allegations in an earlier version of the complaint. In doing so, the Ninth Circuit reasoned that the Federal Rules of Civil Procedure only allow a court to review claims in a complaint for legal sufficiency and concluded that the district court's striking of contradictory allegations as "sham" allegations amounted to an impermissible consideration of the merits of those allegations. *Id*. at 858.[3]

Contrary to defendants' contentions, the Ninth Circuit's subsequent caselaw does not counsel for a different rule. Defendants rely on *Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846 (N.D. Cal. 2022), for their argument that parties "cannot amend pleadings to *directly* contradict an assertion made in the same proceeding." *Id*. (citing *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (emphasis added)). In the Ninth Circuit decision quoted and applied in *Morales*, however, the plaintiff had initially alleged that it "was not actively using [trade]marks" during a specified time, then argued after the district court dismissed the case without leave to amend that it should have been permitted to amend its pleadings to allege that it had actually been using the trademarks during that period. *Airs*

---

[3] Although courts in this district regularly apply *PAE Gov't Services*, they sometimes do so with the caveat that they are permitted to "consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense." *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (citing *Cole v. Sunnyvale,* No. C-08-05017-RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010)); *see also Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846 (N.D. Cal. 2022).

*Aromatics*, 744 F.3d at 600. Because these allegations were directly and irreconcilably inconsistent, the Ninth Circuit held that the plaintiff need not have been permitted to amend the complaint to include the contradictory allegation.

The purported inconsistencies identified by defendants here do not involve the kind of direct contradiction governed by the *Airs Aromatics* rule. Defendants attempt to characterize the complaint as full of "newfound blind belief in [VP's] alleged statements," but that characterization is unfair. At some moments, the complaint teeters between belief and doubt, but if anything that makes Dwarakanath's actions *more* plausible. There are also still instances where Dwarakanath implies that he did not believe everything VP told him. In one notable example, he provides a series of text messages between S.S. and Richard Walters, where S.S. reports that Dwarakanath is "questioning everything." When viewed in the light most favorable to the plaintiff, however, these messages lend credence to the amended complaint. Dwarakanath plausibly alleges that although he doubted VP's claims, he ultimately relied on her statements. The statements provided by Defendants and recounted above sufficiently allege reliance. So, too, do other statements scattered throughout the amended complaint. For example, Dwarakanath alleges that he "believed" the false accusations about K.D. planning to traffic her sister, though he was "initially resist[ant]." As a result, he moved his daughter from Texas to California, enrolled her in a private school, and paid for her to live with an alleged agent of VP's. He claims that he believed VP's statements that an established record of mental health treatment would affect his daughter's college admissions and so paid VP directly instead of via insurance, which increased the cost of his daughter's medical care. After VP diagnosed his daughter with manic depression, bipolar disorder, and schizophrenia, her agents—the Spookies—told Dwarakanath that VP could cure K.D. through herbal supplements and poojas, which Dwarakanath "believed" and paid for. *Id*. Under VP's guidance, Dwarakanath continued to pay for poojas to prevent K.D.'s "murderous thoughts" and to treat her after an alleged drug overdose. These allegations in the amended complaint are sufficient to allege that Dwarakanath relied on defendants' purportedly fraudulent claims.

Defendants separately argue that even if Dwarakanath adequately pleads actual reliance, his alleged reliance was unreasonable. They point to the fact that Dwarakanath made payments to

United States District Court
Northern District of California

defendants until 2025, even though he allegedly had doubts about VP years before he made those payments, as proof that his reliance on their statements was unreasonable. Instances where Dwarakanath attempted to verify VP's alleged representations by requesting more information—like footage of an incident VP claims was recorded—purportedly also undermine the reasonableness of his reliance because, in defendants' view, he would not have attempted to make further inquiries if he was truly convinced by VP. Finally, defendants highlight contradictions within the complaint itself, such as the statement that Dwarakanath was "initially [] skeptical" of defendants, although he "inherently trusted" them because of his family's positive experiences with them and had "no reason to doubt" defendants' promised healing services.

These allegations, either alone or in combination, are not sufficient to render the complaint's allegation of reasonable reliance so implausible that "reasonable minds can come to only one conclusion." *All. Mortg. Co.*, 900 P.2d at 609. Instead, defendants' argument ultimately raises factual questions that cannot be addressed on a Rule 12(b)(6) motion.

Because neither of defendants' challenges to Dwarakanath's fraud claim succeeds, defendants' motion to dismiss that claim is denied.

### B.    Negligent Supervision

Dwarakanath's negligent supervision theory appears to be that certain named supervisees—i.e., cult members—indoctrinated his children and held them captive, then used that control to harass him. Defendants move to dismiss this claim, arguing that Dwarakanath never properly explains how any of the named agents were supervisees of defendants or how they exercised control over his daughters

Negligent supervision claims need be pleaded only with details sufficient to place the defendant on notice of the alleged mistreatment. *I.S. v. Riverside Unified Sch. Dist.*, No. EDCV 23-1505 JGB (SHKX), 2023 WL 11877256, at *5 (C.D. Cal. Sept. 7, 2023) (citing *White v. Superior Court*, 225 Cal. App. 3d 1505 (1990)). Dwarakanath alleges that S.S., his sister-in-law, his brother-in-law, Gautam Kumaran, Richard Walters, Nancy Nardona, Marc, and Belinda were responsible for his minor daughters and failed to exercise reasonable care. But Nancy and Belinda are not alleged to have ever interacted with the children. Instead, they are alleged to have provided

"healing massages and other services for AUM clients." The rest of the agents appear to be sufficiently related to Dwarakanath's injuries, as he specifically alleges how each interfered with his relationship with his children.

Defendants next argue that at least two of the named supervisees—Richard Walters and Marc—cannot plausibly have been negligently supervised, as Dwarakanath also alleges that they either do not exist (Marc) or are simply VP disguising her voice (Walters). But Dwarakanath does not actually allege that Marc does not exist, merely that no one outside of the cult has seen him. This does not necessarily make it implausible that he exists. Second, while Dwarakanath does, at one point, allege on information and belief that Richard Walters may be VP in disguise, that statement does not bar him from alleging, in the alternative, that he is an agent of VP. *See* F. R. Civ. P. 8(d).

Because Dwarakanath sufficiently pleads that VP negligently supervised cult members who wielded control over his daughters other than Nancy and Belinda, his claim may proceed.

### C.    Theft by False Pretenses

The Court did not dismiss Dwarakanath's theft by false pretenses claim in the original complaint but did limit that claim to payments made by Dwarakanath directly to defendants resulting from Dwarakanath's reliance on the defendants' statements. Dwarakanath's amended complaint expands his previous theft by false pretenses allegations to assert an entitlement to a greater recovery. Defendants argue that Dwarakanath's new allegations must be dismissed because he "cannot … maintain that he himself paid [$722,000]," that all that money was paid directly to defendants, or that defendants knew that the money was stolen.

Defendants first argue that the new allegations are insufficient because at least some of the money used to make payments belonged to Dwarakanath's wife, not him. But "property possessed by either spouse during, or on dissolution of, marriage is presumed to be community property." *West v. West*, No. 01-14-00350-CV, 2016 WL 1719328, at *6 (Tex. Ct. App. Apr. 28, 2016). Dwarakanath alleges that all money paid to VP came from his and his wife's joint accounts. He alleges that he "was aware of and consented to all of the payments made to VP and AUM from him and/or S.S., whether the check was signed by Plaintiff or S.S." This is sufficient to allege at

8

the motion to dismiss stage that the payments at issue were made using money belonging to Dwarakanath.

Defendants next argue that Dwarakanath is "pretending that sums were paid to the Defendants" when the payments were actually made to third parties. But this is a factual argument inappropriate for resolution at this stage. While Dwarakanath cannot use his theft by false pretenses claim to recover money paid to third parties rather than to defendants, the Court must accept as true the allegation that his direct payments to defendants exceeded the amount addressed in the Court's prior order.

Finally, defendants argue that because the money was paid by S.S., defendants had no knowledge that the funds were stolen or wrongfully obtained. But the knowledge requirement in theft by false pretenses claims refers to the means the defendant used to obtain the property, not knowledge that the property itself was stolen. *See* Cal. Penal Code § 484 ("Every person … who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money …"); *see also Perry v. Superior Ct. of Los Angeles Cnty.*, 368 P.2d 529, 533 (Cal. 1962) ("To support a conviction of theft for obtaining property by false pretenses, it must be shown: (1) that the defendant made a false pretense or representation [and] (2) that the representation was made with intent to defraud the owner of his property ….").

Accordingly, Dwarakanath's theft by false pretenses claim is adequately pleaded and may proceed.

### D.     UCL

Dwarakanath brings his UCL claims under all three prongs. He alleges that defendants' business acts were unlawful because they violate RICO and various fraud statutes, unfair because they caused him to both relinquish his parental control over his young daughters and pay for unnecessary medical care, and fraudulent because defendants' untrue and misleading representations about their holistic care practices deceived him and other members of the public. Defendants argue that the UCL claims should be dismissed because the court's previous order barred them. They also argue that any allegedly fraudulent statements are nonactionable puffery. Both arguments fail.

United States District Court
Northern District of California

Defendants misconstrue the Court's previous order twice over. First, they argue that because the Court's previous order dismissed Dwarakanath's false advertising claim, his UCL claims should be dismissed as well. But the reason the Court dismissed Dwarakanath's initial false advertising action—that he failed to allege misrepresentations that were directed to the public rather than to just one individual—does not apply to his UCL claims. *See Khan v. Coinbase, Inc.*, 115 Cal. App. 5th 518, 526 (2025) ("[A] private plaintiff who has suffered an injury in fact due to a violation of the UCL … is filing the lawsuit on 'his or her own behalf, not on behalf of the general public.'") (quoting *McGill v. Citibank, N.A.*, 393 P.3d 85, 92 (Cal. 2017)).

Defendants next argue that Dwarakanath cannot bring any UCL claims under the fraudulent or unfair prongs because the previous order upheld his claim "*only* on the unlawful prong of the statute." Again, they misrepresent the Court's holding. The order did not consider the other prongs under the UCL, and even if it had done so, it did not bar Dwarakanath from re-pleading those claims in subsequent complaints.

Defendants next argue that the challenged representations at issue—namely, that their products, services, and treatments fraudulently advertise healing properties—constitute nonactionable puffery. But defendants do not identify the specific statements they contend were puffery. *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1194 (9th Cir. 2016) (noting that a puffery defense is waived when the defendant fails to "identify any specific representations or explain why they constitute puffery").[4] And in any event, several of the statements Dwarakanath identifies are sufficiently specific to preclude a finding of nonactionable puffery. For example, VP claims to have "multiple degrees in business, medicine, and Ayurvedic medicine, from prestigious institutions like Kings College in London and Columbia University," and yet allegedly lacks any relevant degree or other qualifications to be a medical doctor. She claims to be in her mid-sixties and has two young children, which she offers as evidence that she "has magical powers that can

---

[4] This lack of specificity is not entirely defendants' fault, as Dwarakanath fails to allege exactly which statements are fraudulent. Although UCL claims that sound in fraud are subject to Rule 9(b)'s pleading standards, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), defendants do not argue that the UCL fraud claim fails to meet those standards, and so have waived that argument for purposes of this motion.

preserve youth and fertility." She claims she can cure manic depression, bipolar disorder, and schizophrenia using herbal treatments and prayer. And she claims that she cured S.S. of cancer three separate times through "healing" massages.

These statements are specific enough to survive a puffery challenge. They clearly identify an illness or health issue (schizophrenia, fertility troubles, cancer) and a promise to cure them. While vague statements are not actionable, factual assertions are. *See*, *e.g.*, *Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*, No. 22-CV-04261-VC, 2023 WL 3049106, at *2 (N.D. Cal. Apr. 21, 2023) (holding that an allegation that a product was the "smartest self-cleaning litter box" was classic nonactionable puffery, but that claims of specific sales numbers and a 99% effectiveness rate were actionable); *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (noting that a claim that a lamp that was "far brighter than any lamp" was not actionable, but the claim that the lamp had "35,000 candle power and 10–hour life" was actionable). VP's claim that she is a licensed medical professional is also a concrete representation that withstands any puffery defense. Defendants might have been more successful if they had argued that it was unreasonable to rely on certain statements, like the claim that VP could cure fertility troubles because of her "magical powers." But because defendants failed to raise that issue, they have waived that argument for the purposes of this motion. Dwarakanath's UCL claims may therefore proceed.

## II.    Motion to Strike

As noted already, "[m]otions to strike are generally disfavored" and should only be granted if the stricken matter could not possibly bear on the litigation. *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 755 (N.D. Cal. 2024). If there is any doubt as to the relevancy of the material, the motion should be denied. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

Defendants' motion to strike fails to meet the high standard required by the Federal Rules. They continuously conflate the idea that a claim should be dismissed with the idea that the contents of that claim should be struck. For example, Defendants seek to strike portions of the complaint that allege a theory under the fraudulent prong of the UCL, arguing that Dwarakanath

United States District Court
Northern District of California

11

cannot "properly pursue" such a theory. In addition to that being incorrect, *supra* section I.D., it appears that defendants believe any claim that fails to survive a motion to dismiss must also be stricken from the complaint. That is not the applicable standard.

Defendants also seek to strike portions of the complaint that involve allegations of defamation either directly by or influenced by defendants—namely, the letters sent to his supervisor and friends. It is true that Dwarakanath does not allege defamation as a cause of action. But the paragraphs are still relevant to his claims because they allege harassment by defendants through their manipulation of Dwarakanath's children. Because there is a possibility that this material could be relevant to the claims, it will not be stricken. *See Doe 1 v. Univ. of San Francisco*, 685 F. Supp. 3d 882, 907 (N.D. Cal. 2023) (holding that the court could not say the allegations have no possible bearing on the trial and denying the motion).

Defendants next seek to strike portions of the complaint that describe the pending divorce proceeding between Dwarakanath and his wife, including the filing of false reports and restraining order applications. But these allegations are directly relevant to the proceeding because they demonstrate a pattern of misconduct, manipulation, and interference with Dwarakanath's parental rights. Additionally, defendants themselves earlier sought to introduce evidence from the divorce proceedings. *See* Dkt. 68. Having done so, they cannot now argue that these proceedings are entirely irrelevant.

Defendants finally seek to strike portions of the complaint that describe the methods Dwarakanath used to transfer money to VP. Defendants, however, fail to explain the legal grounds for striking that material. The paragraphs are highly relevant to plaintiff's claims and even if they were not, defendants' failure to provide any legal explanation for why they should be struck dooms the argument. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs.").

United States District Court
Northern District of California

12

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: May 4, 2026

_____
P. Casey Pitts
United States District Judge