United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VARADARAJAN DWARAKANATH,

Plaintiff,

v.

VAIDYAJI PRIYANKA, et al.,

Defendants.

Case No.  5:25-cv-06465-PCP

**ORDER GRANTING ANTI-SLAPP MOTION**

Re: Dkt. No. 72, 73

Plaintiff Varadarajan Dwarakanath brings this lawsuit against Vaidyaji Priyanka ("VP"), AUM Ayurveda ("AUM"), and Does 1–50 arising from defendants' relationships with Dwarakanath, his wife, and his then-minor children. Dwarakanath's original complaint was dismissed in part, and he then filed a first amended complaint. The Court denied defendants' subsequent motion to dismiss and strike portions of the FAC. Defendants then filed counterclaims for libel, slander, and abuse of process. Dwarakanath now moves to strike portions of the counterclaims under Federal Rule of Civil Procedure 12(f) and to strike their entire contents under California's anti-SLAPP law, Cal. C.C.P. § 425.16. For the following reasons, the Court GRANTS the anti-SLAPP motion.

**LEGAL STANDARD**

The purpose of California's anti-SLAPP law is to prevent the filing of actions that "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013) (citation omitted). The statute should "be construed broadly." Cal. C.C.P. § 425.16.

To prevail on an anti-SLAPP motion, a movant must first "make a prima facie showing"

that the suit arises from an act made by the movant in furtherance of their right to petition or speak. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d at 1272. If the movant meets that step, the burden then shifts to the plaintiff to establish that there is a reasonable probability that they will prevail on their claim. *Id.* A court may consider the pleadings and supporting affidavits when determining whether there is a probability that the plaintiff will prevail on the claim. Cal. C.C.P. § 425.16.

The Ninth Circuit reviews anti-SLAPP motions to strike under different standards depending on the motion's basis. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). If the motion is based on a legal insufficiency in the pleadings, then the motion is evaluated in the same manner as a motion to dismiss under Rule 12(b)(6). *Id.* at 834. If the motion challenges the factual sufficiency of a claim, then it is decided under the same standard as a Rule 56 motion. *Id.* Therefore, courts in this district interpret *Planned Parenthood* to create another step in the California anti-SLAPP inquiry: before applying step two, courts look at whether the defendant's challenges are legal or factual. *See, e.g.*, *Todd v. Lovecruft*, No. 19-CV-01751-DMR, 2020 WL 60199, at *8 (N.D. Cal. Jan. 6, 2020); *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 961 (N.D. Cal. 2020); *ITN Flix, LLC v. Hinojosa*, No. 214CV08797ODWAGRX, 2019 WL 3562669, at *5 (C.D. Cal. Aug. 6, 2019).

## ANALYSIS

The motion attacks both the legal and factual sufficiency of the counterclaims. Because the Court can resolve the motion on a purely legal basis, it declines to consider Dwarakanath's factual arguments. *Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 833.

## I.    Libel Claims

VP's libel claims are based on letters sent by Dwarakanath's lawyers to Dwarakanath's ex-wife (S.S.) and her attorney, S.S.'s brother, S.S.'s sister, Dwarakanath and S.S.'s financial advisors, Gautam Kumaran, AUM Sacred Art, and Evelyn and Ken Leong. Each letter was sent directly from Dwarakanath's lawyers and included a draft complaint. The letters to S.S.'s siblings, AUM Sacred Art, Gautam Kumaran, and the Leongs informed the recipients that Dwarakanath

2

United States District Court
Northern District of California

planned to subpoena them as witnesses and requested that they preserve any potentially relevant evidence.

A cause of action arising from any act of a person that furthers their right of petition or free speech is subject to a motion to strike. Cal. C.C.P. § 425.16(b)(1). An act of petition includes "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. C.C.P. § 425.16(e). "The filing of a lawsuit is an exercise of the First Amendment right to petition the government. Consequently, claims that arise out of the filing of a suit arise from protected activity for purposes of the anti-SLAPP statute. The same is true of discussions that precede the filing of a suit." *Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1076 (Cal. 2021) (cleaned up).

The letters to S.S. and her attorney, S.S.'s siblings, AUM Sacred Art, Gautam Kumaran, and the Leongs are textbook examples of statements made in connection with an issue under consideration by a judicial body. Cal. C.C.P. § 425.16(e)(1)-(2). All were made in anticipation of litigation, as evidenced by the fact that they contained the draft complaint. They are therefore protected as an extension of Dwarakanath's constitutional right to petition. *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 783 (1996) (citing *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 19 (1995)).

VP argues that Dwarakanath's communications do not satisfy the first prong of the anti-SLAPP test because they were sent to "nonparties." But statements to nonparties are protected if they relate to "substantive issues in the litigation" and are "directed to persons having some interest in the litigation." *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1266, 1270 (2008). VP does not provide any citations for her assertion that "legally, the possibility of being subpoenaed to testify does not equate to having a stake in a case." And even if she could substantiate that argument, there is no requirement that a nonparty have a "stake" in the outcome of the case; they must merely be interested in the case. *Neville* found protected the sending of a prelitigation letter to a defendant's customers who had "an interest in the dispute as potential witnesses to, or

3

United States District Court
Northern District of California

unwitting participants in, Neville's alleged misconduct." *Id*. at 1268. As the letters at issue here themselves state, their recipients were all "potential witnesses," so they had the necessary interest in Dwarakanath's lawsuit.

Dwarakanath's letter to his financial advisors presents a somewhat closer issue. Dwarakanath claims he sent the letter to his advisors "who were already aware of the dispute and who flagged the suspicious transactions." VP responds that the financial advisor lacked any "legally cognizable interest in the lawsuit," and that the letter therefore could not arise from activity protected by the anti-SLAPP statute.

As noted already, the letter was protected if it related to "substantive issues in the litigation" and was "directed to persons having some interest in the litigation." *Neville*, 160 Cal. App. 4th at 1266, 1270. The first requirement is satisfied because the communication they received (a draft complaint) contained only the allegations on which the instant action is based. Its entire content thus related to this litigation. *Mandel*, 503 F. Supp. 3d at 963 (statements to nonparties were protected because the communications contained no statements of fact other than the allegations on which the action was based). The financial advisors also had an interest in this litigation. They were involved with certain payments to VP, so much so that the advisors had flagged transactions involving VP. Those payments are a key part of Dwarakanath's suit, which involves fraud and RICO claims based on the wiring of funds from Dwarakanath and S.S.'s accounts.

VP argues that Dwarakanath originally claimed that he sent the letters "in hopes that some current members of the cult would see through the manipulation and extricate themselves from Defendants' control," thus defeating the purpose stated in the letters themselves, which was to inform potential witnesses of the litigation and ask them to preserve any relevant evidence. But even if Dwarakanath had multiple purposes for sending the letters, so long as one of them was connected to his right to petition the sending of the letters was protected. *See Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citing Cal. C.C.P. § 425.16(a)) (noting that California's anti-SLAPP statute should be "construed broadly.").

Because Dwarakanath has met his burden to show that the counterclaims are directed at

4

United States District Court
Northern District of California

activity protected by California's anti-SLAPP statute, the burden shifts to VP to show that she may prevail on the claims. Dwarakanath contends that VP cannot do so because her libel claims are barred by California's litigation privilege. *Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014) (citing *Flatley v. Mauro*, 139 P.3d 2, 17 (Cal. 2006)).

Communications with "some relation" to judicial proceedings are absolutely immune from tort liability. *Rubin v. Green*, 847 P.2d 1044, 1047 (Cal. 1993) (citing Cal. Civ. Code § 47(b)). That litigation privilege encompasses anticipated lawsuits. *Id.* at 1048. As explained above, VP's libel claim is based solely on Dwarakanath's communications regarding the suit against her, so they fall within California's litigation privilege.

VP invokes *Rothman v. Jackson* to argue that Dwarakanath's letters are not connected with any ongoing litigation. In *Rothman*, Michael Jackson—then one of the most popular musicians in the world—held a press conference in order to deny charges of child sexual abuse by lawyer Barry Rothman's client before then accusing Rothman of extortion. *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1139 (1996). When Rothman sued Jackson for the resulting reputational damage, Jackson asserted the litigation privilege, arguing that his speech to the media was protected because it was connected to an ongoing legal proceeding. *Id.* The *Rothman* court disagreed, holding that similarity in subject matter alone is not sufficient to trigger the litigation privilege. *Id*. at 1146. Instead, the "connection" between a communication and litigation must be a "functional connection," i.e., the communicative act "must function as a necessary or useful step in the litigation process." *Id*.

VP's reliance on *Rothman* is misplaced. The communicative act at issue in *Rothman* involved a press conference, whereas here, the defamatory statements at issue were made in prelitigation letters informing nonparties that they may be subpoenaed and requesting that they preserve any evidence related to the litigation. They were not public statements made in an attempt to "litigat[e] in the press." *Id*. at 1149.

VP next launches a series of challenges rooted in the argument that Dwarakanath sent the letters not in furtherance of a judicial proceeding but because he intended to encourage cult members to defect, or "with the intent that certain recipients republish them to additional third

parties," or to somehow interfere with a parallel family court proceeding in Texas. But this has no bearing on whether the letters were also in furtherance of litigation. *See Silberg v. Anderson*, 786 P.2d 365, 374 (Cal. 1990), *as modified* (Mar. 12, 1990) ("[T]he furtherance requirement was never intended as a test of a participant's motives, morals, ethics or intent.") (citation omitted).

Finally, the Court notes that the procedural history of this case provides additional support for Dwarakanath's invocation of the litigation privilege. Nearly all the individuals who received letters were named in the original complaint. As to the only ones who were not (the Leongs), Dwarakanath believed they were closely affiliated with the cult. At the time he sent the letters, he reasonably could have thought they possessed information relevant to the litigation.

## II.    Slander Claims

VP also brings counterclaims of slander, alleging that Dwarakanath made statements similar to those in the letters "orally to third parties whose exact identities are not currently known to her."

VP fails to allege any facts about the identities of the parties who received the statements. Without more, the Court relies on the allegation that the contents of the statements were similar to the letters described above to reasonably infer that the unidentified parties were also similarly interested parties. Therefore, Dwarakanath meets his burden under step one of the anti-SLAPP analysis.

In determining whether a slander cause of action is adequately pleaded, "the touchstone is whether 'the pleading gives notice of the issues sufficient to enable preparation of a defense.'" *Laps v. Leland Stanford Junior Univ.*, No. 25-CV-05767-SVK, 2026 WL 145957, at *3 (N.D. Cal. Jan. 20, 2026) (citing *Okun v. Superior Ct.*, 629 P.2d 1369, 1378 (Cal. 1981)); *see also Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 894 (2020) ("[E]ven for purposes of slander, the disparagement set forth in the complaint must be sufficiently close to the actual words proved to acquaint a defendant with what he must defend against.") (citation omitted). Here, by failing to identify anything about the individuals to whom Dwarakanath purportedly made the statements at issue, VP fails to allege facts sufficient to allow Dwarakanath to prepare a legal defense. Because the pleading does not meet the standards of Federal Rule 8(a), VP cannot satisfy

United States District Court
Northern District of California

6

her burden at the second step.

## III.    Abuse of Process Claims

Abuse of process has two elements: (1) an ulterior motive, and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. *Maleti v. Wickers*, 82 Cal. App. 5th 181, 229 (2022). Abuse of process is distinct from malicious prosecution as it requires the "misuse of the tools the law affords litigants once they are in a lawsuit," such as improper use of discovery, service of wrongful attachments, or obtaining a TRO to perpetuate a false representation concerning a party. *Id*. at 230. The mere filing of a lawsuit is not a basis for abuse of process. *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 728 P.2d 1202, 1209 (Cal. 1986).

The first step of the anti-SLAPP analysis is satisfied because the basis of the claim is the filing of a lawsuit. And once again, VP cannot meet her burden under step two. Because VP does not allege the use or misuse of legal tools following the filing of a lawsuit and instead premises her claim solely on the filing of this lawsuit, her abuse of process claim fails. *Id.*

### CONCLUSION

For the foregoing reasons, Dwarakanath's anti-SLAPP motion is granted and her counterclaims are dismissed. Because Rule 15(a) evinces a liberal policy favoring amendment, the Court grants VP leave to amend her slander and abuse of process claims. *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Because amendment would be futile as to the libel claim, dismissal of that count is without leave to amend. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1161 (9th Cir. 2021). Dwarakanath's motion to strike under Fed. R. Civ. P. 12(f) is denied as moot.

Any amended countercomplaint must be filed within 35 days of the date of this Order. If no amended countercomplaint is filed, VP's counterclaims will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: July 23, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

7